ST. LOUIS UNION TRUST COMPANY, Trustee under the Will of FRANK W. HILL, v. LLOYD RANDALL HILL, formerly PAYNE, PAUL VASQUEZ HILL, formerly PAYNE, Appellants, and EDNA SCHWARZ, KATE COMINS, SUSAN HILL and MABEL HILL.—76 S. W. (2d) 685.

Court en Banc, November 20, 1934.

18

*Claud D. Hall* for Lloyd Randall Hill, formerly Payne, and Paul Vasquez Hill, formerly Payne.

*William T. Ragland, Robert E. Moloney, George T. Priest, Ragland, Otto & Butler* and *Boyle & Priest* for Edna Schwarz, Kate Comins, Susan Hill and Mabel Hill.

TIPTON, J.—This is an appeal from the Circuit Court of the City of St. Louis. This suit was instituted by the St. Louis Union Trust Company, trustees, for the construction of the will of Frank W. Hill. This will was executed April 4, 1918, and the testator died September 5, 1918, leaving four daughters, Mrs. Edna Schwarz, Mrs. Kate Comins, Susan Hill, Mabel Hill, and a son, Frank W. Hill, Jr.

This will was duly probated and the estate was duly administered by the executor and afterwards turned over to the St. Louis Union Trust Company as trustee. It was in charge of the estate at the institution of this suit on May 12, 1930.

The St. Louis Union Trust Company asked the court to construe the will as to whether the share of Frank W. Hill, Jr., deceased, should be turned over to the appellants or to the respondents.

By his will the testator left a life estate in equal shares to all of his children, with the remainder to their heirs-at-law.

On the 27th day of September, 1918, Frank W. Hill, Jr., married Mary Payne, who had previously been married to John Payne, but was divorced from him. Of that marriage two boys were born, Lloyd and Paul Payne. After the divorce the two boys lived with their grandparents, that is, the parents of Mrs. Hill. In 1929, Frank W. Hill, Jr., became ill and all hope for his recovery was abandoned. By a decree from the Juvenile Court of the City of St. Louis, he and his wife adopted Mrs. Hill's two sons by her former marriage. At the time of the adoption, the two boys were married and were, respectively, twenty-two and twenty-eight years of age. By decree of court, these two boys' names were changed from Payne to Hill. About two months after the adoption, Frank W. Hill, Jr., died.

The respondents state the issue in this case in their brief as follows:

"The two Payne men, now bearing the name of Hill, contend that, having been adopted by Frank W. Hill, Jr., upon his deathbed, became his heirs-at-law and as such heirs-at-law they are entitled to take as remindermen of Frank W. Hill, Jr., under the will of Frank W. Hill, Sr.

"It is the contention of the respondents, Edna Schwarz, Kate Comins, Susan Hill and Mabel Hill, daughters of Frank W. Hill, Sr., that their father intended to limit remaindermen under the will to those of his blood and not to strangers, and therefore, Lloyd Payne and Paul Payne have no interest in the estate of Frank W. Hill, Sr."

I. To uphold the action of the trial court the respondents contend that the adoption of the appellants was void for the want

of jurisdiction of the court decreeing the adoption. The respondents argue that the statutes provide only for the adoption of minors.

We do not agree with the respondents. This chapter contemplates both the adoption of minors and adults.

In the case of State ex rel. Buerk v. Calhoun, 330 Mo. 1172, 52 S. W. (2d) 742, we have recently ruled that the juvenile division of the Circuit Court of the City of St. Louis had jurisdiction of both the subject matter and the parties in a proceeding under Section 14073 to 14081, Revised Statutes 1929, to decree an adoption of an adult. That case fully answers the contention of the respondents and it would serve no useful purpose to elaborate upon it. We hold that the court had jurisdiction to enter a decree of adoption in the proceeding instituted by Frank W. Hill, Jr., and his wife. As the appellants at that time were over twenty-one years of age it was not necessary to obtain the written consent of their natural father to give the court jurisdiction in those proceedings. [Sec. 14074, R. S. 1929.]

II. The respondents further contend that the adoption of the appellants was void because the Adoption Act (Sess. Acts 1917, p. 193; Secs. 14073 to 14081, R. S. 1929) is unconstitutional, in violation of Section 4, Article XXVIII of the Constitution of Missouri, in that it embraces matter not indicated by its general title, and not germane to the general title of the act.

The first time this constitutional question was raised was in the respondents' briefs. It was not raised in any pleading filed in the trial court. "Under our rule a constitutional question must be raised at the first opportunity and kept alive during the trial." [Gould v. Chicago, B. & Q. Railroad Co., 315 Mo. 713, 290 S. W. 135, 1. c. 141.] It was not timely raised and for the purpose of this suit we must presume that the act is constitutional.

III. It therefore becomes necessary for us to construe the will of Frank W. Hill, Sr. In construing this will it is our duty to find out what was the intention of the testator as gathered from the four corners of the will and such intention must control unless it contravenes some established rule of law. [Trautz v. Lemp, 329 Mo. 580, 46 S. W. (2d) 136, also, Sec. 567, R. S. 1929.]

IV. Only the following sections of the will have any bearing on the questions to be determined on this appeal.

"Section No. 4 . . . After paying all costs and expenses incurred in the administration of this trust, including a reasonable fee to such Trustee, for its services hereunder, I direct that the said Trustee shall accumulate the entire net income arising from such estate, for a period of ten (10) years, from and after the date of my death, without the distribution of any portion of such net income, except in the case of emergencies, as hereinafter mentioned, and from

and after the expiration of ten (10) years, from the date of my death, I direct the Trustee to divide my estate into five (5) equal shares, for the use and benefit of my five (5) children, Edna Schwarz, Kate Comins, Susan Hill, Mabel Hill and Frank W. Hill, Jr., and from and after the expiration of ten (10) years from the date of my death, the said Trustee shall pay and distribute in equal monthly installments, the entire net income arising from the share of each child, to him or her for and during his or her natural life, and upon the death of any child, his or her share shall be distributed, free from trust, to his or her heirs-at-law; provided, however, that if at the time of the death of any of my children hereinabove mentioned their heirs-at-law or any of them are minors, then this trust shall continue with respect to the share of such minor, until he or she attains his or her majority, and the Trustee may apply the income from his or her share of the trust estate, for his or her use and benefit, or may pay the same to his or her lawful Guardian or Curator.''

''Section No. 6: I hereby authorize the said Trustee to advance any reasonable sum at any time, out of the accumulated income or from the *corpus* of the estate, which may be reasonably necessary in the opinion of the Trustee, for the comfort and support of any beneficiary under this will, including a child or grandchild, and to make such advances whenever it shall see fit, to meet any emergency which may arise by virtue of sickness, ill health, accident or otherwise, as it is my desire that my children or grand-children, if any, in the event of the death of their parents shall be reasonably and comfortably provided for, and that they shall not be in want, and I direct the said Trustee, in order to carry out my desire in this matter, to use its own judgment in making any such advances from time to time, if they shall become necessary as herein provided.''

''Section No. 8: I hereby direct and provide that the beneficiaries under this will, shall have no power or authority to sell, exchange, mortgage, pledge, assign or transfer, any interest that they may acquire as beneficiaries hereunder, nor to anticipate any income therefrom, nor shall they or any of them have any right to partition any of the real estate which may constitute a part of this trust estate.''

The appellants contend that as they were adopted by Frank W. Hill, Jr., they are entitled to the estate as his ''heirs-at-law.'' While ''it is the respondents' contention that when sections four, six and eight are read together it shows an intention of the testator to bequeath his estate to the heirs of the blood.''

We must find what disposition the testator intended to make from the words he used in the will. We are not allowed to guess what he meant or what he might have done under certain conditions, if not expressed in his will. We cannot redraft it for him. Taking Section 4 of his will, it is clear that upon the death of Frank W. Hill, Jr.,

the property was to go to his heirs-at-law, free from the trust, provided his heirs-at-law were not minors. As to whether the appellants were his heirs-at-law at the time of his death depends upon the Statutes of Descent and Distribution in force and effect at the time of his death, and the statutes on adoption that were in force at the time the appellants were adopted by Frank W. Hill, Jr.

" 'The right of the Legislature to prescribe the right of descent and inheritance cannot be doubted. It is not a natural right.' The word 'heir,' in its strict and technical import, applies to the person or persons appointed by law to succeed to the estate in case of intestacy." [In re Cupples Estate, 272 Mo. 465, 199 S. W. 556, l. c. 557.]

These appellants were made the heirs-at-law of Frank W. Hill, Jr., not by contract, but by complying with the adoption statutes. [Act of 1917 Legislature: Chap. 125, R. S. 1929.] By decree of court they were declared to be his adopted children, and it must follow that they were the heirs-at-law of their adopting father.

The respondents in their brief do not contend that the appellants are not the heirs-at-law of Frank W. Hill, Jr. But they claim that the testator intended to limit his property to the heirs of the blood stream. In other words, if we correctly understand the respondents' position, they do not contend they would be entitled to the property in dispute, if these appellants had been the natural children of Frank W. Hill, Jr. Respondents argue that in Section 6, the testator speaks of his child or grandchild and therefore when he uses the term heir-at-law in Section 4 he meant his grandchildren.

Assuming that the respondents are correct in their construction of the will, are the appellants in any different position under the will than they would have been if they were the natural children of Frank W. Hill, Jr.?

"The testator is presumed to have known the law governing wills, and is presumed to have prepared his will in the light of that law." [Trautz v. Lemp, 329 Mo. 580, 46 S. W. (2d) 135, l. c. 139.] This will was executed April 4, 1918, and at that time the testator is presumed to have known the adoption statutes now in force and effect as passed by the 1917 Legislature. The appellants were adopted under the provision of that act. It then becomes necessary for us to see if the rights of adopted children under that act differ from those of natural children.

The rights of adopted children are set forth in Section 14079, Revised Statutes 1929, which is as follows:

*"When a child is adopted in accordance with the provisions of this article, all legal relationship, and all rights and duties, between such child and its natural parents, shall cease and determine. Said child shall thereafter be deemed and held to be for every purpose, the child*

*of its parent or parents by adoption, as fully as though born to them in lawful wedlock.* Said child shall be entitled to proper support, nurture and care from said parents by adoption, and shall be capable of inheriting from, and as the child of said parents as fully as though born to them in lawful wedlock. Said parent or parents by adoption shall be entitled to the service, wages, control, custody and company of said adopted child, and shall be capable of inheriting from, and as the parents of, said adopted child as fully as though the child had been born to them in lawful wedlock: *Provided, however,* that neither said adopted child nor said parents by adoption shall be capable of inheriting from or taking through each other property *expressly limited* to heirs of the body of such child or parent by adoption. [R. S. 1919, sec. 1101.]'' (Italics ours.)

This section repealed Section 1673, Revised Statutes 1909, that section is as follows:

''From the time of filing the deed with the recorder, the child or children adopted shall have the same right against the person or persons executing the same, for support and maintenance and for proper and humane treatment, as a child has, by law, against lawful parents; and such adopted child shall have, in all respects, and enjoy all such rights and privileges *as against the persons executing the deed of adoption. This provision shall not extend to other parties, but is wholly confined to parties executing the deed of adoption.''* (Italics ours.)

By comparing these two sections we see that the Legislature sought to radically change the rights of adopted children from that that existed prior to the year 1917. Under the statute in force prior to 1917, the adoption was made legal by a deed of adoption, and the statute expressly stated that the relation of parent and child was confined to the parties to the deed. It excluded all collateral kin by adoption. The procedure required under the terms and provisions of our present adoption statutes are such as to constitute a new and complete code governing adoption of children and the rights and relations flowing therefrom. Therefore, our decisions relative to adoption by deed, could not aid us in construing the present statute and we will not lengthen this opinion by discussing them.

''Reverting to the section of the statute above set out (Sec. 14079) it will be noted that it is therein expressly declared that from and after the adoption the adopted child 'shall . . . be deemed and held to be *for every purpose* the child of its parent or parents by adoption, as fully as though born to them in lawful wedlock.' (Italics ours.) This positive language discloses the legislative intent to establish the same legal relationship between the adopting parents and the adopted child that exists between parents and a natural child. Apparently the artificial relation is to be given the same effect as the actual relation.'' [Shepherd v. Murphy, 332 Mo. 1176, 61 S. W. (2d) 746, l. c. 748.]

Moreover, this section provides in no uncertain terms that the adopting child will inherit from the adopting parents and the adopting parents will inherit from the adopted child "as fully as though the child had been born to them in lawful wedlock."

In the case of Shepherd v. Murphy, supra, in construing our present adopting statutes, we recently held that under this section a natural mother could not inherit from an adopted child, because, *upon adoption "all legal relationship, and all rights and duties, between such child and its natural parents, shall cease and determine."* [Section 14079, supra.] (Italics ours.)

The State of Maine has a statute similar to ours, it provides that an adopted child becomes "to all intents and purposes, the child of his adopters, the same as if born to them in lawful wedlock."

The Supreme Court of that state in the case of Warren v. Prescot, 84 Me. 483, l. c. 487, in construing that statute said:

"It is competent for the Legislature to place a child by adoption in the direct line of descent as for the common law to place a child by birth there. And that is precisely what the Legislature has done, and what it undoubtedly intended to do, when, in strong and emphatic language, it declared that a legally adopted child becomes to all intents and purposes, the child of the adopters, the same as if he were born to them in lawful wedlock."

The Legislature had a right to and did in strong and emphatic language change the blood stream of an adopted child. Under our present statutes an adopted child's relations with its natural parents cease; and by law it becomes the child of its adopting parents *for every purpose* as fully as though born to the adopting parents in lawful wedlock. In other words, the adopted child is taken out of the blood stream of its natural parents and placed, by the operation of law, in the blood stream of its adopting parents, if adopted under the provisions of our present statutes.

■ Adopting the respondents' construction of this will, the appellants are entitled to this estate unless under the will they come within the one exception named in the statute. This exception is as follows: *"Provided, however*, that neither said adopted child nor said parents by adoption shall be capable of inheriting from or taking through each other property *expressly limited to heirs of the body of such child or parents by adoption."* (Italics ours.)

The word "expressly" is defined in Webster's New International Dictionary to mean: "In an express manner; *in direct or unmistakable terms*; explicitly; definitely; directly."

With this definition in mind we find nothing in the will that shows that the testator intended to leave this property to the *heirs of the body* of Frank W. Hill, Jr. We believe under the facts in this case, the appellants would have been included, even if the words heirs-at-

law were used interchangeably with the word "child" or "grandchild." It is true at the time the will was executed, Frank W. Hill, Jr., was not married, but the testator must have had in mind the possibility of his son's marriage and the possibility of children being born of that marriage, also the possibility of this son adopting a child or children, especially in event that he married. If he did not want an adopted child to have any of his property he could have easily provided for such a contingency in his will by *expressly limiting* his property to go to the bodily heirs of his son, but he did not do so.

Section 4 of the will is the only section dealing with the disposition of the estate of the testator. It gives each of his children a life estate, "and upon the death of any child, his or her share shall be distributed free from trust to his or her *heirs-at-law.*" He again uses the phrase *heirs-at-law* in event any of them are minors at the time of the death of any of his children: Thus, to our mind, these phrases clearly show that he did not intend to limit his estate to the heirs of the body of Frank W. Hill, Jr. The testator did not expressly limit the estate to the heirs of his son's body, even if the words "heirs-at-law" could be said to mean his son's children or the testator's grandchildren.

Respondents contend that Section 8 of the will expressly prevents the participation of appellants in the estate of Mr. Hill, Sr.

This section provides that "the beneficiaries under this will shall have no power or authority to sell, exchange, mortgage, pledge, assign or transfer any interest that they may acquire as beneficiaries hereunder, not to anticipate any income therefrom. . . ." Both sides concede that Frank W. Hill, Jr., only had a life estate. He was only entitled to income from the estate, except in emergency which may arise by virtue of sickness, ill health, accident or otherwise, then in such cases the trustee may use the principal. We find nothing in the record that Frank W. Hill, Jr., attempted to convey his life estate. That is what we think Section 8 of the will means. The property dispute is not the life estate of Frank W. Hill, Jr., but the remainder of the estate after his death.

So, we think there is nothing in the will expressly showing an intention of the testator to limit his estate to the bodily heirs of his son. Construing the will as respondents contend it should be construed, would not keep the appellants from taking the property to the exclusion of the respondents, in view of our present adoption statutes.

From what we have said, the judgment of the circuit court must be reversed and remanded with directions to enter a judgment in conformity with this opinion. It is so ordered.

PER CURIAM:—The foregoing opinion by *Tipton, J.,* in Division Two, is adopted as the opinion of the Court en Banc. All concur.