MISSISSIPPI VALLEY TRUST COMPANY, a Corporation, Sole Surviving Trustee Under the Will of JULIUS S. WALSH, SR. (Deceased), Plaintiff, v. MARY ELIZABETH (Also Known as Polly) WALSH; CHARLES PALMS, Administrator of the Estate of ISABELLA WALSH PALMS; and JULIA CROSBY WALSH and the MISSISSIPPI VALLEY TRUST COMPANY, Executors of the Estate of N. S. CHOUTEAU WALSH, Appellants, JULIUS S. BATES ET AL., Respondents, No. 41459—229 S. W. (2d) 675.

Division One, May 8, 1950.

*Chas. Claflin Allen* for appellants; *Lehmann & Allen* of counsel.

*Rhodes E. Cave, George W. Simpkins, Marion S. Francis* and *J. Marvin Krause* for respondents; *Bryan, Cave, McPheeters & McRoberts* of counsel.

612

■■■■

CONKLING, J.—Mary Elizabeth (Polly) Walsh, Isabella Walsh Palms and N. S. Chouteau Walsh (in his individual capacity) appealed from the trial court's decree in an action, instituted by the then trustees of the testamentary trust estate created for C. K. Dickson Walsh, to construe the will of Julius S. Walsh, Sr., of St. Louis, Missouri (hereinafter called testator), and for a determination of the rights to share in the above mentioned trust estate. The case is one of first impression.

The facts are undisputed. Testator's will was executed June 30, 1916. He was a widower, and died March 26, 1923. His will was admitted to probate in the City of St. Louis, his estate was duly administered and his executors were discharged. Testator had seven children and his will divided his residuary estate in seven equal parts. Testator's seven children were: (1) a daughter, Isabella, who married Chas. L. Palms; (2) a daughter, Ellen, who married William Maffit; (3) a son, Julius S. Walsh, Jr.; (4) a son, Robert A. B. Walsh; (5) a son, N. S. Chouteau Walsh; (6) a son, C. K. Dickson Walsh; and (7) a daughter, Josephine, who had married John S. Bates. Josephine had died in April, 1916, leaving three surviving children, (1) Julius S. Bates, (2) Mary Josephine Bates (who married Wade T. Childress), and (3) Ellen Bates, who died unmarried in 1940.

On May 22, 1925, these three last named children of Josephine Walsh Bates were legally adopted by their aunt, Ellen Walsh Maffit, the sister of the mother of said children. That adoption (under the Act of 1917) was in the Juvenile Division of the circuit court of the City of St. Louis. On October 30, 1940 Ellen Walsh Maffit died in St. Louis leaving no children or descendants of her own. She was survived by two of her adopted children. Testator was survived by all his children except Josephine, who had died in 1916. And before the death of C. K. Dickson Walsh, two more of testator's children, Julius S. Walsh, Jr., and Robert A. B. Walsh, died. Julius S. Walsh, Jr., left no children or descendants but Robert A. B. Walsh was survived by one daughter, Mary Elizabeth (Polly) Walsh, an appellant here.

By testator's will one-seventh of his residuary estate was bequeathed direct to each of his five following children: (1) Isabella Walsh Palms, (2) Ellen Walsh Maffit, (3) Julius S. Walsh, Jr., (4) Robert A. B. Walsh and (5) N. S. Chouteau Walsh. With respect to those five children the will further provided: "In the event of the death before my decease of any of my five children, Isabella, Ellen, Julius, Robert and Chouteau, then at my decease their respective shares of the residue of my estate *shall pass per stirpes to their then respective heirs at law.*"

One-seventh of testator's estate was left in trust for the children of his daughter, Josephine Walsh Bates. Those children came of age, the assets of said trust were paid to them under the provisions of the will and that particular trust was terminated, satisfied and closed. As to the termination of the trust for Josephine's children the will provided: "When all surviving children of my daughter (Josephine) become twenty-one (21) years of age, or all shall die before that time, said trust shall end and the trustees shall promptly convey, transfer and *pay per stirpes to the then descendants of my daughter Josephine* all of the income and principal then held in trust for them, if she leave descendants then surviving; otherwise the trustees shall promptly convey, transfer and pay said income and principal to my then heirs at law under the laws of Missouri."

The remaining one-seventh of testator's estate was left in trust for his son, C. K. Dickson Walsh, and the termination of said trust, and disposition of the assets thereof were provided in the will in these words: "The aforesaid trust for my son, C. K. Dickson Walsh, shall continue for and during his natural life. During said trust for him the trustees may, from time to time, pay to him the net income of the trust estate. On his death after my decease said trust shall end and, after payment of expense of his last illness and funeral, the trustees shall promptly convey, transfer and pay the then income and principal of the trust estate to the descendants of my son, Dickson,

if any, and if he leave no descendants then *per stirpes to my then heirs at law* under the laws of Missouri." The trustees of the two trusts were testator's sons and Mississippi Valley Trust Company.

C. K. Dickson Walsh died August 14, 1947, leaving no descendants and the trust created for him then terminated. It is agreed that the present value of the trust estate created for C. K. Dickson Walsh is $200,000. After this action was filed, Mary Josephine Bates Childress (wife of Wade T. Childress) died and the cause was revived against Wade T. Childress, individually and as executor and trustee under his wife's will, and also against her two minor children, Wade T. Childress, Jr. and John Savage Childress. After the appeal from the judgment below, Isabella Walsh Palms died on December 24, 1949. Charles Palms was appointed as her administrator and was substituted in this cause in this court in her stead. Thereafter, N. S. Chouteau Walsh died on March 26, 1950. Julia Crosby Walsh and the Mississippi Valley Trust Company were appointed as his executors, and were substituted in this cause in this court in his stead. All of testator's children are now deceased.

The trial chancellor's decree found that testator's heirs at law at the time of the death of C. K. Dickson Walsh, and their respective shares in the C. K. Dickson Walsh trust estate were as follows: (1) Isabella Walsh Palms, testator's daughter, one share; (2) Mary Elizabeth (Polly) Walsh, only child of Robert A. B. Walsh, one share; (3) N. S. Chouteau Walsh, testator's son, one share; (4) Julius S. Bates and Josephine Bates Childress, two shares (one share as grandchildren of testator and children of testator's daughter, Josephine Walsh Bates; and one share as the adopted children of Ellen Walsh Maffit, who was testator's daughter). Upon that finding the Chancellor ordered the plaintiff trustees to distribute the C. K. Dickson Walsh trust estate: one-fifth thereof to Isabella Walsh Palms; one-fifth thereof to Mary Elizabeth (Polly) Walsh; one-fifth thereof to N. S. Chouteau Walsh; one-fifth thereof to Julius S. Bates; and one-fifth to defendant Wade T. Childress, as executor under the will of Josephine Bates Childress.

Appellants contend that the children of Josephine Walsh Bates are not entitled to two shares of the C. K. Dickson Walsh trust estate; and state that "the question here is whether Mrs. Maffit, by her act of adoption (of the Bates children), could make these two grandchildren double heirs of her father (the testator) within the meaning of his will." Appellants also contend that the question "is not one of strict right to inherit, but the question is what did Mr. Walsh intend."

The petition prays a construction of this will, and directions as to distribution. It is the cardinal construction rule that the courts determine the testator's intention from the entire will and give effect to it unless it violates positive law. Kingston v. St. Louis Union

Trust Co., 348 Mo. 448, 154 S. W. (2d) 39. But a court cannot write a new will under the guise of construction. We must determine testator's intention from the entire will, and cannot "guess what he might have done under certain conditions, if not expressed in his will." St. Louis Union Trust Co. v. Hill, 336 Mo. 17, 76 S. W. (2d) 685, St. Louis Union Trust Co. v. Kelley, 355 Mo. 924, 199 S. W. (2d) 344.

As supporting their contention that the children of Josephine Walsh Bates should take two shares of the C. K. Dickson Walsh trust estate, one share through their natural mother, and one share through their adoptive mother, respondents cite In re Bartram's Estate, (Kan.) 198 Pac. 192, In re Wilson's Estate, 95 Colo. 159, 33 Pac. (2d) 969, Wagner v. Varner, 50 Iowa 532, In re Benner's Estate, (Utah) 166 Pac. (2d) 257 and 28 Washington University Law Review 238. They have all been carefully examined. None of them are cases of dual inheritance under the will of a common ancestor, and where, as here, testator's intention appears from the words he used. They involve inheritance under the statutes of other states, wherein a grandchild was adopted by a grandfather, who later died intestate. In some of those cases under those facts the courts approved dual inheritance. Other cases, such as Billings v. Head, (Ind.) 111 N. E. 177, under the same facts, follow the Massachusetts, New Hampshire and New York rule that where "the heir occupies a dual capacity, it cannot inherit both as grandchild and adopted child."

Appellants' brief cites In re Kessler's Estate, (Pa.) 135 Atl. 618, Johnson v. McDowell, (Iowa) 134 N. W. 419, Burnes v. Burnes, 132 Fed. 485, Manning v. Manning, 229 Mass. 527, 118 N. E. 676, Delano v. Bruerton, (Mass.) 20 N. E. 308, Teed v. Morton, 60 N. Y. 502, Einstein v. Michaelson, 177 N. Y. upp. 474, Thompson v. Betts, (Conn.) 51 Atl. 564, and 38 L. R. A. (N. S.) 589, note b. And see also, 41 Ill. Law Review, 466, 30 Minnesota Law Rev. 395, Leighton v. Leighton, (Iowa) 188 N. W. 922, 929, 930, and Young v. Bridges, (N. H.) 165 Atl. 272. Those cases are not determinative here. We have been cited to no case by either brief, and our research has revealed no case which can be said to be an authority on the facts this record presents.

It is said in Young v. Bridges, supra, wherein the Supreme Court of New Hampshire ruled against dual inheritance in a case of adoption by a child's own relative: "A statute in Massachusetts making the child an heir of the adopting parents and retaining his inheritance from his own kindred was held in Delano v. Bruerton (Mass. 20 N. E. 308) to give the child no inheritance from such parents when they were his natural next of kin. Dual inheritance being enacted, logically it led to inheritance in a dual capacity from the same source, and the court seems to have gone almost beyond the extremes of construction to avoid so extreme a situation * * * Slight authority upon the issue is found elsewhere. The view of text-writers that a

dual inheritance is given when the statute does not clearly bar it, has support from very few adjudicated cases.'' In Leighton v. Leighton, supra, the court said: ''There is a presumption against double portions. The courts, in endeavoring to arrive at the true intention of a testator, incline against any construction of the will which would give double portions to the partial exclusion of others whose claims are equally meritorious.'' But in the Leighton case no question of adoption was involved.

In 2 C. J. S. Adoption of Children, p. 454 it is said: ''The adopted child continues to inherit from all blood relatives in the absence of a statute to the contrary, although he may be denied the right to inherit in a dual capacity where the adoptive parent is a blood relative.'' Another Indiana case permitted the one in the dual capacity to inherit in the capacity which gives it the greater right, but not in both. ▮▮▮ Head v. Leak, (Ind.) 111 N. E. 952. But the rule of none of those cases is decisive here.

▮ We are admonished by Mo. R. S. A., Sec. 568, that, ''All courts * * * shall have due regard to the directions of the will, and the true intent and meaning of the testator in all matters brought before them.'' We must determine the intention and meaning of testator. The intention to equally provide for his children, and for his grandchildren per stirpes, is manifest throughout this entire will. A widower, who had had seven children, he divided his residuary estate into seven equal parts. His basic purpose and evident intention was equality as to those seven children. To five of those children he gave one-seventh of his estate outright as a direct bequest. He provided, however, that if any of those five children should predecease him (testator) that the respective share of any such deceased child should ''*pass per stirpes* to their then respective heirs at law.'' Testator thus sought to maintain the integrity of each of his own children's equal share, and to preserve it for their respective children.

Testator next set up an equal seventh of his residuary estate in trust for the children of his deceased daughter, Josephine. In that trust he provided for the care, etc., of Josephine's children. Upon the termination of this trust when these children became of age this trust estate was to be paid *per stirpes* to Josephine's children. That one-seventh of his estate which formed the original corpus of that trust estate was intended to remain the permanent property of Josephine's children. Testator again evidenced his intention and desire for equality among his seven children, and their respective children.

The last, and an equal one-seventh of testator's residuary estate, was conveyed in trust for the care and support of the seventh of testator's children, C. K. Dickson Walsh. The will provided that this trust should not terminate until Dickson's death. Holding to his equality rule, only one-seventh of testator's residuary estate was

transferred into the trust estate for Dickson. He provided that upon Dickson's death, without descendants, that trust estate should go "*per *stirpes* to my then heirs-at-law under the laws of Missouri." In this provision testator again evidenced his basic intention and desire for equality and his determination to preserve the integrity of the original stirpes.

Therefore, it was plain intention and basic purpose of testator as expressed in this will to create seven equal parts of his residuary estate; that each one-seventh part (for each of his seven children) should inure to the benefit of each of his said children who were living and then should go to the children of each such child. The scheme of the will evidenced testator's intention that the stirp should be the unit of equality and division. That conclusion is inescapable from the entire will. Such conclusion is further compelled by the provision of the will that if C. K. Dickson Walsh died, without leaving descendants, that the assets of the trust estate for Dickson should be conveyed "*per stirpes* to my (testator's) then heirs at law under the laws of Missouri." In effect, it said that if Dickson should die without descendants that the assets of Dickson's trust should then be divided equally and per stirpes among testator's then living children, or if any such then be dead, per stirpes to the children of any such of testator's children as then survived. No other conclusion can be reached from this will.

■ Respondents contend that the children of Josephine Walsh Bates (i. e., Julius S. Bates and Josephine Bates Childress) who survived Dickson, were entitled to first take one share per stirpes of the C. K. Dickson Walsh trust estate through their own mother; that through their own blood mother, Josephine Walsh Bates, they were testator's heirs at law. It may be conceded that Josephine's children, through their own natural mother, were entitled to one per stirpes share of the Dickson trust estate. The mere fact that Josephine's children were adopted by their mother's sister did not prevent them from inheriting through their own blood mother, as heirs at law of testator, one per stirpes share of the Dickson trust estate. It is within the power of the General Assembly ■ to determine who shall inherit from one who dies intestate. Shepherd v. Murphy, 332 Mo. 1176, 61 S. W. (2d) 746. But in Missouri the legislature has not said that one who has been adopted by another shall not inherit from his natural parents. In re Cupples Estate, 272 Mo. 465, 199 S. W. 556. See also, St. Louis Union Trust Co. v. Kaltenbach, 353 Mo. 1114, 186 S. W. (2d) 578, Clarkson v. Hatton, 143 Mo. 47, 44 S. W. 761, 1 Am. Jur. Adoption of Children, p. 656, § 57, 2 C. J. S., p. 454, § 63(c). At the instant of birth the status of a child is fixed by law. At birth a child is and becomes the issue of its parents and acquires certain inheritance rights under the statute respecting Descents and Distributions, as that statute now stands.

Whether a natural born child, upon the decease of its parents, becomes the heir of its parents depends not upon contract, court decree or election. The law establishes such status.

But respondents further contend that Josephine's children were entitled to have a second share of the Dickson trust estate as the adopted children of testator's deceased daughter, Ellen Walsh Maffit. Were Josephine's children entitled to take a dual inheritance? Do the terms of testator's will permit of the conclusion for which Josephine's children contend?

We concede that Josephine's children, by virtue of their adoption by their own aunt, testator's daughter, under Mo. R. S. A. Sec. 306 and Sec. 9614, were heirs at law of testator at the time of Dickson's death. Tevis v. Tevis, 259 Mo. 19, 167 S. W. 1003, 1007. But in the Brock v. Dorman, 339 Mo. 611, 98 S. W. (2d) 672, 674, we said: "In the matter of construing the rights of an adopted child to take under a will, it should be borne in mind that it is not a question of the right of an adopted child to inherit, but simply a question of testator's intention with respect to those who are to share in his estate."

Conceding that adopted children, under the Missouri Adoption Statute, Mo. R. S. A., Sec. 9614, inherit from the adoptive parent, and that, under some circumstances, they may inherit through the adoptive parent as an heir at law of the father of such adoptive parent, it does not follow, that under *this* will, Josephine's children were entitled to take a second and additional share of this trust through their adoptive mother. Testator's intention must govern here. Through their own blood mother Josephine's children were in testator's blood line, and, being therein, were already heirs at law of testator. Can one come twice within the term "heir at law" and be a double heir at law? We do not think so. When one is in testator's blood stream and an heir at law through one's own blood mother does the artificiality of an adoption by a blood relative reopen the blood stream a second time for the purpose of a double share of the inheritance? We do not think so. This must be particularly true here where the intention of the testator to divide his estate equally among the seven stirps is so obvious.

If testator had provided for a distribution of the corpus of the Dickson trust estate "per capita to my then heirs at law under the laws of Missouri", then Julius S. Bates and Josephine Bates Childress would each have been entitled to one share of the Dickson trust. The will, however, provided not for per capita distribution but for per stirpes distribution. The determinative words are "per stirpes". The words "heirs at law" are merely descriptive of the class to which the distribution was to be made, if Dickson died without descendants. The words "per stirpes" determine the method of distribution to the class, the heirs at law. In the context in which the words "per

stirpes'' are here used, of necessity they limit the distribution to the heads, or stock or family, the heads of the various families, that is, to or through testator's own children. Property is divided per stirpes when the descendants (of the testator) take by representation by their parent, that is, the children of a child of testator, take, among them, only the share which their parent would have taken, if the parent had been living. From this will it is plain that testator intended that whatever share of his residuary estate any of his grandchildren received should come to any such grandchild ▮▮▮ only through the natural parent of any such grandchild. That the testator first divided his residuary estate into seven equal parts and with but one of those parts created a trust for Josephine's three children, together with the other per stirpes provisions of the will compel that conclusion.

We find nothing in this will to indicate any intention that one grandchild, or that the children of any one of testator's children, should have more than one share of the Dickson trust estate. Any intention so capricious and inequitable cannot be read into the will. We think the contrary intention is clear. The dominant purpose of testator to treat his children, and the respective children of any and all of testator's seven children, with even handed equality bespeaks testator's intention that the Dickson trust estate should have strict per stirpes division, his grandchildren taking only such a share as their natural ancestor would have taken if living. We therefore rule that, under this will, Josephine's children were entitled to but one share of the C. K. Dickson Walsh trust estate, and that they cannot take another and an additional share as adopted children of Ellen Walsh Maffit. It is our view that the contrary conclusion, which would result in inequality instead of the equality testator desired, could be reached only from words in the will definitely authorizing the taking of a dual share. There is no such authorization in the will.

Under the facts and circumstances before us here, respondents' argument for duality of inheritance is not convincing. It is the spirit and purpose of the adoption statutes, and the public policy of the state, to help give the adopted child as good a chance in the world as children in general have. The welfare of a child is a fundamental interest of the state. Adoption is a means ''to provide homes and proper nurture, education and training for children who have lost their parents, or for children whose parents, because of misfortune or improvidence, are unable to properly rear and educate them.'' It is no part of the public policy of the state that adoption should operate as an instrumentality for dual inheritance, with resulting animosity and litigation among those whom a testator provided in his will should share with equality and per stirpes. And the denial of

dual inheritance under these circumstances is not opposed to the public policy of promoting the welfare of adopted children.

The decree of the circuit court is therefore reversed and the cause is remanded with directions to proceed in accordance with the views herein expressed. It is so ordered. All concur.