Stewart, J.
Section 8030, General Code, effective August 5, 1921, a part of the adoption act, provided:
“* * * and the child shall be invested with every legal right, privilege, obligation and relation in respect to education, maintenance and the rights of inheritance to real estate, or to the distribution of per *360 sonal estate on the death of such adopting parent or parents as if born to them in lawful wedlock; provided, such child shall not be capable of inheriting property expressly limited to the heirs of the body of the adopting parent or parents * *
Under this and like provisions of the adoption act as it existed prior to 1921, this court consistently held that an adopted child could inherit from but not through an adopting parent. Quigley v. Mitchell, 41 Ohio St., 375; Phillips, Exr., v. McConica, Gdn., 59 Ohio St., 1, 51 N. E., 445; Albright v. Albright, 116 Ohio St., 668, 157 N. E., 760.
Section 10512-19, General Code, was enacted as a part of the new Probate Code effective January 1, 1932, and there was added to the provisions of Section 8030, General Code, the following language:
* * but shall be capable of inheriting property expressly limited by will or by operation of law to the child or children, heir or heirs at law, or next of kin, of the adopting parent or parents, or to a class including any of the foregoing * * *.”
The purpose of the 1932 amendment was stated as follows in the comment of the Probate Code Committee of the Ohio State Bar Association, which drafted the new enactment:
“All of former G. C. 8030 except the first sentence is included here, and the words ‘but shall be capable of inheriting property expressly limited by will or by operation of law to the child or children, heir or heirs at law, or next of kin, of the adopting parent or parents or to a class including any of the foregoing’ have been added. The new matter permits adopted children to inherit through as well as from the adopting parent.”
In 1946 this court decided the case of Flynn, Admr., v. Bredbeck, 147 Ohio St., 49, 68 N. E. (2d), 75, wherein it was held that as a result of the enactment of Section 10512-19, General Code, an adopted child inherits *361 through as well as from his adopting parent. The third paragraph of the syllabus of that case reads:
“3. By the terms of Section 10512-19, General Code (114 Ohio Laws, 474), reciting that an adopted child shall be capable of inheriting property expressly limited by will or by operation of law to the child, heir, or next of kin of the adopting parent, an adopted child was enabled to inherit property through as well as from his adopting parent, whether such property passed by will or by operation of law.”
The doctrine of the Flynn case has very recently been approved by this court. Staley, Admr., v. Honeyman, 157 Ohio St., 61.
Section 10512-19 has since been repealed and reenacted, in 1944 as Section 10512-23 and in 1951 as Section 8004-13, without any change which would affect the issue involved in the present case.
The rationale of the decisions in the present case of both the Probate Court and the Court of Appeals seems to be that Section 10512-19 was in effect at the time the testatrix executed the tenth codicil to her will (although it was not in effect at the time of the execution of her original will); that it must be presumed that testatrix knew the adoption statute; that any child which either of her children might adopt would be in the same class as his or her blood children; and that, therefore, when she provided for her grandchildren, such a provision was for the benefit not only of the blood children of her children but of whatever children testatrix’s children might adopt, unless testatrix limited the provision to the heirs of the body of the adopting parent or parents.
The lower courts reasoned that testatrix made no provision limiting the provisions for her grandchildren to the heirs of the body of her children, and that, therefore, the adopted child of Jefferson Patterson shared under the tenth codicil of her will.
*362 We have come to a different conclusion from that of the lower courts.
It must he remembered that the bequests in the tenth codicil were made to the testatrix’s grandchildren directly, and that they inherit under such codicil neither from nor through their parents.
The testatrix was not a party to any adoption proceedings. In truth, no adoption was made until more than five years after her death. She adopted no grandchildren and could not do so for the reason that there is no provision in Ohio for the adoption of grandchildren. We would have a different question before us if she had made the provision in her tenth codicil that property passed to her children and thereafter to her grandchildren or to her children’s children. In fact, in the residuary clause of her will she devised and bequeathed all the residue of her estate to her children in equal proportions and provided that the children of such of her children as should die prior to her decease would take the share their parent would have received, if such parent had survived her.
However, the bequests in the tenth codicil were directly from testatrix to her grandchildren, and her intent must be ascertained from within the four corners of the codicil, although it is presumed that the testatrix knew the adoption statutes in effect at the time she executed the codicil and such statutes must be considered in such ascertainment.
It is argued for the blood children of testatrix’s daughter that the testatrix must have intended her bounty for her blood grandchildren only, for the reason that she used the term, “my grandchildren,” so many times in her will, and that, since the bequests from her did not pass to the grandchildren from their parents and she herself was a stranger to any adoption and no adoption had occurred prior to her death, she must have had in mind only blood grandchildren.
*363 It is argued further that the tenth codicil showed a design to include only the children of testatrix’s daughter, for the reason that the codicil contemplated a return of four per cent on a million dollars, which would amount to $40,000; and that $19,000 per annum was bequeathed to parties of the same generation as testatrix, which would leave $21,000, or $5,000 for each of the then living grandchildren and $1,000 for expenses of administration. Further, the codicil provided for a bequest of $10,000 per annum each to the grandchildren, which would come into effect at a time when, in all probability, the beneficiaries of the $19,000 annual bequests had died, and the income from the million dollars would at that time pay the $10,000 per year to the four grandchildren.
The obvious weakness in this argument is that the number of grandchildren might be increased by the birth of additional children to the children of testatrix.
The strongest and almost conclusive indication that testatrix intended only her blood grandchildren to be her beneficiaries under the tenth codicil is the words she used with reference to them. Those words are: “I further direct that out of the net income of said trust fund such trustee shall pay to each of my then living grandchildren, whether born prior or subsequent to my decease * * (Italics ours.)
Assuming that both the blood and adopted children of testatrix’s children were her grandchildren, they would be such in one of two ways, they would either be born to or adopted by her children. In the codicil she provided for grandchildren whether born prior or subsequent to her decease. Adopted children of testatrix’s children would not be born as her grandchildren at any time.
Supposing, for instance, as might well have occurred, Jefferson Patterson had adopted a child after his *364 mother’s death, which child had been born prior to her death. Such an adopted child could not be a grandchild of testatrix born prior to her decease, for the reason that the child was not either a born grandchild or an adopted child at that time. Such a child could not be a grandchild born after testatrix’s decease because, although the child was adopted after such decease, he was born prior thereto. Therefore, such a child would not be a grandchild born prior or subsequent to the decease of the grandmother.
Although under Section 10512-19, General Code, which was in existence at the time of the execution of the tenth codicil, and under Section 10512-23, General Code, in effect at the time of testatrix’s death, an adopted child of her child would be in a class including the children of such adopting parent and would be capable of inheriting property expressly limited by will or by operation of law either from or through the adopting parent, a stranger to the adoption proceedings could, of course, transmit property by will directly to children of the adopting parent and distinguish between the blood children and those who had become children by adoption.
We have hereinbefore called attention to the distinction made between the residuary clause of the will, wherein testatrix devised and bequeathed her residuary estate to her children and provided that the children of such children would take in the event of the death of one of testatrix’s children before her death, and the bequests in the tenth- codicil directly to her grandchildren whether born prior or subsequent to her decease.
It is argued further that if the will should be interpreted as including the adopted children of testatrix’s children as beneficiaries under the tenth codicil, Jefferson Patterson, if he were hostile to his sister or her children, might adopt an indefinite number of children *365 and thus so dilute the bequests under the codicil as to make them of little value. It is not intimated that this situation exists. In fact, we are informed through the brief of the trustee that Jefferson Patterson, with as we believe extraordinary unselfishness, desires us to know that he believes his adopted daughter is entitled to nothing under the will and that it was not in his mind to create a beneficiary under the will when he adopted his daughter. Obviously his declaration has no bearing upon the legal question which we must solve, but it does show that the argument with reference to diluting the benefits of the codicil by wholesale adoptions is merely a supposititious one.
In the case of Dulfon v. Keasbey (Court of Chancery of New Jersey), 162 A., 102, it was held that the term, “grandchildren,” used in a will did not include the adopted child of testator’s son for, although the adopted child bore the relation of child to his adopting parents, that did not make him a grandchild of the testator, and that the will disclosed that by grandchildren testator meant those of which he was the ancestor; In the opinion it is stated: “Blood relationship has always been recognized by the common law as a potent factor in testacy.”
In the case of Fidelity Union Trust Co. v. Hall (Court of Chancery of New Jersey), 6 A. (2d), 124, a testatrix made a bequest to each of her grandchildren. Subsequent to the execution of the will, testatrix’s son adopted a daughter. It was held that such adopted daughter took nothing under such bequest. In the opinion the court stated at page 129:
“The will * * * was executed prior to the adoption, and by a stranger to the adoption. Under those circumstances, an adopted child of a child of the testator * * * does not take under a gift to ‘grandchildren’ of the testator * * * unless there be other evidence in the instrument or the surrounding circumstances suf *366 ficient to show an intent by the testator that he should take. ’ ’
In the case of St. Louis Union Trust Co., Trustee, v. Hill, 336 Mo., 17, 76 S. W. (2d), 685, relied upon by the Court of Appeals in the present case, it was held that a will bequeathing a life estate in property to children and, on their death, to their heirs at law manifested testator’s intention not to limit the estate to heirs of the body of a child, so as to exclude an adopted child of testator’s son from taking the deceased parent’s share, under an exception to a statute precluding inheritance by an adopted child, where descent of property is expressly limited to heirs of the body of the parent.
However, that same court decided the case of Mississippi Valley Trust Co., Trustee, v. Walsh, 360 Mo., 610, 229 S. W. (2d), 675, and there held that courts determine a testator’s intention from the entire will and give effect to it unless it violates positive law.
The court there held further, in construing rights of an adopted child to take under a will, that there was presented not a question of the right of the adopted child to inherit but simply a question of the testator’s intention with respect to those who are to share in his estate, and that, under a will manifesting an intent of the testator that any share of his residuary estate which any of his grandchildren might receive should come to them only through the natural parent of such grandchild and failing to indicate that any grandchild should have more than one share of such estate, the children of a daughter of the testator adopted by another daughter after their mother’s death were entitled to but one share of the trust estate and could not take an additional share as adopted children of their adopting mother.
In view of the facts that in bequeathing or devising property by will it is presumed that a testator who has *367 not been a party to any adoption proceedings prefers his own blood relatives to strangers; that at the times of the execution of the tenth codicil and of testatrix’s decease neither of her children had adopted any children; that in such codicil she made her grandchildren her direct beneficiaries and not beneficiaries through her children; and that she provided for her grandchildren born before or after her decease, as distinguished from adopted, we have come to the conclusion that she intended her grandchildren named in the tenth codicil to be those who were born to her children and not those adopted by them.
Accordingly, the judgment of the Court of Appeals is reversed, and the cause is remanded to the Probate Court for further proceedings in accordance with this opinion.

Judgment reversed.

Zimmerman, Middleton, Taet, Matthias and Hart, JJ., concur.