# PHILLIP SETZLER v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

### Division One, April 12, 1910.

1. **EVIDENCE OF DEFECT: Not Pleaded.** · Where the case was not submitted to the jury upon the questions of defects in the tracks or appliances, testimony as to defects in the track where the accident occurred, introduced as bearing on the question of whether there was a stop, a start, and a jerk, and objected to because no defects in the track were pleaded, is not error.

2. **NEGLIGENCE: Variance: Jerk: Stopped or Moving Slowly.** The main point of plaintiff's case being that it was the jerk of the car that threw him down as he was alighting therefrom, it was immaterial under his petition which charged that the car "had stopped or slowed down so as to be almost stopped," which was correct, plaintiff's testimony being that it had stopped, and defendant's that it had slowed down and was moving very slowly when the jerk came; and plaintiff's instruction in the language of the petition cannot be said to be without evidence to support it.

3. ————: **Servant's Failure to Do Duty: No Evidence: Inference.** Because the passenger who fell to the pavement when the car suddenly moved forward with a jerk, neither saw the gripman nor heard a signal or action of the grip, is no reason for concluding that the jerk was not caused by some act of the gripman or conductor. When the jerk is shown and facts and circumstances are also shown, the jury are entitled to draw inferences that reasonably come from them.

4. ————: **Given Instruction: Marked Refused.** Defendant's instruction was marked "refused," but was read to the jury, argued by defendant's counsel, and taken by the jury to their

Setzler v. Railroad.

room, and the bill of exceptions recites that to the action of the court in marking it "refused" defendant duly excepted. *Held*, first, that the recital should be understood to mean that the mistake was not discovered until after the trial and that the exception was then taken, which was too late; and, second, the instruction being erroneous or misleading, defendant, by reading and arguing it to the jury, got more benefit from it than it was entitled to.

5. ——: Instruction: Jerk: Attempting to Alight Before Stopping Car. Where the gravamen of plaintiff's case is that he was thrown down by a jerk as he was alighting from the car, an instruction telling the jury that if he was attempting to alight while the car was still moving he could not recover, should not be given where the evidence is that the car had stopped before the jerk came or that it was moving very slowly. It is not negligence *per se* for a passenger to step on the running-board of a street car while it is slowly moving.

6. ——: Evidence: Report of Conductor. The fact that plaintiff, on cross-examination, brought out the fact that the conductor had made a written report of the accident to defendant at the time it occurred, and asked him questions about it, but did not call for its contents, did not make it error to refuse to admit said report in evidence when offered by defendant.

7. EXCESSIVE VERDICT: $7750. Plaintiff, sixty-seven years old, hale and vigorous, fell on the pavement as he was attempting to get off of defendant's street car; his hip was broken and other injuries ensued; he was placed in a plaster cast, and it was eight months before he was able to leave his bed, and during all the time he suffered greatly; at the time of the trial, three years later, he was barely able, with the aid of crutches, to go a distance of one or two blocks; and he probably will never again have the use of the injured leg. *Held*, that a verdict of $7750 was not excessive.

Appeal from Jackson Circuit Court.—*Hon. J. L. Smith,* Special Judge

AFFIRMED.

*Jno. H. Lucas, J. W. Suddath* and *Ben T. Hardin* for appellant.

(1) Where specific acts of negligence are pleaded, it devolves upon the plaintiff to prove the acts of neg-

ligence pleaded, and, if he recover at all, it must be on the specific acts of negligence pleaded, and not otherwise. Orcutt v. Cent. Bldg. Co., 201 Mo. 443; McGrath v. Railroad, 197 Mo. 105; Bartley v. Railroad, 148 Mo. 124; Ferry v. Railroad, 162 Mo. 96; Ely v. Railroad, 77 Mo. 34; Bunyan v. Railroad, 127 Mo. 12; Hamilton v. Railroad, 114 Mo. App. 508; Beaver v. Railroad, 212 Mo. 531; Roscoe v. Railroad, 202 Mo. 576; Kirkpatrick v. Railroad, 211 Mo. 68. (2) The rule of *res ipsa loquitur* does not apply where the acts of negligence complained of are specifically pleaded. Orcutt v. Cent. Bldg. Co., 201 Mo. 443; McGrath v. Railroad, 197 Mo. 105; Bartley v. Railroad, 148 Mo. 124; Ferry v. Railroad, 162 Mo. 75; Ely v. Railroad, 77 Mo. 34; Bunyan v. Railroad, 127 Mo. 12; Hamilton v. Railroad, 114 Mo. App. 504. (3) An instruction not based on the evidence is erroneous and should not be given. Hahn v. Cotton, 136 Mo. 227; Smith v. Sedalia, 152 Mo. 299; Press B. & M. Co. v. Buick Co., 151 Mo. 511; Regan v. Railroad, 144 Mo. 636; Price v. Railroad, 77 Mo. 512. (4) It is error to refuse to instruct upon a theory of defendant's case, supported by his evidence. R. S. 1899, sec. 748; Seefert v. Withington, 63 Mo. 580. (5) If plaintiff interrogates a witness about the existence and contents of a memorandum made at the time of the accident, then that memorandum becomes competent and it is error to exclude it. (6) It is error to admit proof of any act of negligence or defect in machinery or track, not pleaded. 29 Cyc. 611; Dlanhi v. Railroad, 135 Mo. 440; McMannaman v. Railroad, 71 Mo. 515; Price v. Railroad, 72 Mo. 415; Kirkpatrick v. Railroad, 211 Mo. 68. (7) Considering plaintiff's age, sixty-nine years, the verdict for $7750 is excessive. Waddell v. Railroad, 213 Mo. 8. (8) Where the verdict is against the great weight of the evidence and the physical facts in evidence in the case, a new trial should be granted.

*Scarritt, Scarritt & Jones* and *E. A. Setzler* for respondent.

(1) Appellant's first assignment does not point out specifically any ruling of the trial court complained of and will not therefore be considered in this court. As this constitutes no assignment of error as to any specific ruling of the court in regard to the admission or rejection of evidence this court will not search the record for questionable rulings of the court in that respect, and therefore this assignment will not be considered by the court. Supreme Court Ruling No. 15; Hamilton v. Crowe, 175 Mo. 634; Lumber Co. v. Miller, 64 Mo. App. 620; Honeycutt v. Railroad, 40 Mo. App. 677; Newman v. Virginia Co., 80 Fed. 288; U. S. v. Indian Grave Dist., 85 Fed. 928. This assignment is without merit on any part of the record. (2) (*a*) There is no more specific designation in appellant's printed brief of the ruling complained of in this respect than that contained in the assignment quoted above. We therefore submit that under the established practice in this court and the authorities cited by us under (1) this assignment is without merit, because it is not sufficiently specific. (*b*) On page 101 of appellant's abstract of the record, this is found: Examination by Mr. Hardin, defendant's attorney: "Q. You made this report at the time and turned it in to the company? A. Yes, sir. Mr. Hardin: We offer to read, or allow counsel for plaintiff to read, this statement that he has asked the witness about, that was made by him to the company; we offer to read the report the gentleman has questioned the witness about. Mr. Scarritt: We object to that as an *ex parte* statement; as incompetent, irrelevant and immaterial, and as a self-serving statement. The Court: On what ground do you claim that is admissible? Mr. Hardin: The attorney for the plaintiff has gone into this matter. Plaintiff's attorney has questioned this witness about the contents of the report he made immediately after the accident and

turned in to the company, in regard to taking the names of the witnesses and how many there were, and on that question I now offer it in evidence. Objection sustained; to which ruling of the court the defendant than and there duly excepted." The report of this casualty made by an employee to the master is not even claimed by the appellant to be *res gestae*. It is a mere self-serving statement, not made under oath, not purporting to have been made from personal knowledge, and is incompetent under all known rules of evidence. (3) (*a*) The appellant's contention seems to be that an instruction on the part of the plaintiff submitting a theory of recovery, unless the facts involved in that theory have been developed by the plaintiff's proof alone, is erroneous; in other words, that if the instruction submits issues of fact properly raised by the pleadings, if the proof of those facts is brought out in part by the plaintiff and in part by the defendant, such an instruction is error as a matter of law. Our understanding of the proper practice is just to the contrary of this contention. We assert that it is the better practice to submit the issues raised by the pleadings for the determination of the jury and to invoke all the evidence, whether adduced by the plaintiff, or defendant, or by both, in the determination of those issues; and that it is bad practice, amounting possibly to an illegal commentary upon the evidence, to ask a verdict upon specific evidential facts without regarding testimony tending to sustain other facts within the allegations of the petition. Ridenhour v. Railroad, 102 Mo. 270; Peck v. Transit Co., 178 Mo. 627; Feary v. Railroad, 162 Mo. 93; Green v. Railroad, 122 Mo. App. 650; Hurley v. Railroad, 120 Mo. App. 262; Forrester v. Railroad, 116 Mo. App. 40. (*b*) A second criticism of this instruction, made by the appellant, is based upon the assertion that unless some one has testified, without equivocation, and on personal knowledge, that he saw the gripman move the car forward, or unless that fact was admitted

by the employees of the defendant, then the jury were not warranted in finding that the employees of defendant upon and in charge of the car "carelessly and negligently, and without allowing plaintiff a reasonable time to get off the said car, and without any warning to plaintiff caused or permitted said car to be suddenly started and jerked forward." It is not necessary in order to sustain a charge of negligence against a defendant that every specific and particular act of the party or his servants be disclosed by the testimony. This rule applies in all cases, whether the defendant be a common carrier and the plaintiff its passenger or not, and is a radically different principle from what has loosely been called in our jurisprudence the *res ipsa loquitur* doctrine as applied to suits by passengers against common carriers to recover for permanent injuries. 1 Shearman & Redfield on Negligence (5 Ed.), sec. 58; 3 Elliott on Evidence, sec. 1902; 6 Thompson on Negligence, p. 75; Dougherty v. Railroad, 9 Mo. App. 484; Dougherty v. Railroad, 81 Mo. 325; Memphis Co. v. McCool, 83 Ind. 392; Rine v. Railroad, 100 Mo. 234; Witting v. Railroad, 101 Mo. 641; Lynch v. Railroad, 208 Mo. 1; Och v. Railroad, 130 Mo. 51; Redmon v. Railroad, 185 Mo. 1; Chadwick v. Railroad, 195 Mo. 517. (c) Neither does the petition in this case charge, nor do plaintiff's instructions require the jury to find, specific acts of negligence on the part of the defendant or its servants. It leaves the specific act of negligence, causal of the forward jerk, to be found by the jury; and under all the Missouri authorities, even those relied upon by the appellant, under this state of the pleadings, the sudden starting of the car, the resultant injury to the plaintiff, he being a passenger, makes a prima-facie case and is sufficient proof to carry the case to the jury. And there being evidence disclosed by the record here, under well recognized principles of liability, to take the case to the jury, their verdict is conclusive as to the fact. Dougherty v. Railroad, 81 Mo.

325, 9 Mo. App. 478; Ridenhour v. Railroad, 102 Mo. 270; Chadwick v. Railroad, 195 Mo. 517.

VALLIANT, J.—Plaintiff sues to recover damages for personal injuries alleged to have been sustained by him through the negligence of defendant. The trial resulted in a judgment for the plaintiff for $7750, from which the defendant has appealed.

Defendant operates a street railway in Kansas City. It has a line of double tracks on Walnut street running north and south, and another line of double tracks, crossing the former, on Ninth street running east and west. At the time of this accident the cars on those tracks were operated by cables. The cables which drew the cars on Walnut street passed under those which drew the Ninth street cars. As a car moving south on Walnut street would approach the Ninth street crossing the gripman would open the jaws of his grip and drop the cable, so as to clear the Ninth street cables, and the car would be carried over the crossing by the momentum. If no stop was intended there, the gripman as soon as the car had cleared the crossing would catch the cable with his grip and the speed would be resumed. When the aim was to stop on the far side of that crossing, the momentum was usually sufficient to carry the car that far, but if not the gripman would catch the cable and make the clearing.

Plaintiff was a passenger on a car going south on Walnut street aiming to stop on the south side of Ninth street. When his car passed over the crossing and slowed down to stop, or did stop, he attempted to alight, and in doing so he either fell or was thrown down on the street and received severe injuries. In his petition the plaintiff states his case in this way: "That immediately upon the arrival of said car at the place aforesaid and when it was stopped, or slowed down, so as to be almost stopped, for the purpose afore-

said, the plaintiff attempted to alight therefrom; that while he was in.the act of so doing and while he was exercising ordinary care on his part, the defendant, acting by and through its servants and agents upon and in charge of said car, carelessly and negligently, without allowing plaintiff a reasonable time to get off of said car, and without any warning to plaintiff, and when defendant's servants and agents upon and in charge of said car saw or by the exercise of ordinary care might have seen the situation of plaintiff in the act of alighting from said car, in time by the exercise of ordinary care to have so managed said car as to have avoided any injury to the plaintiff, caused or permitted said car to be suddenly started or jerked forward, whereby plaintiff was thrown violently from said car to the pavement.''

Plaintiff testified that when the car passed over Ninth street it stopped still, and he said: ''After the car crossed Ninth street on Walnut the car stopped and the passengers got up, I took my two little bundles in my left arm and had my right hand on the upright post and stepped out with my right foot, standing on the foot-board, and as soon as I touched the pavement the car took a sudden jerk and threw me off the car on the pavement and I came down in a sitting position.'' Asked on cross-examination how far the car went after it started up he answered,''Well, about two feet I think. Q. Now you tell the jury, if I understand you, that while that car was standing at a dead standstill and you were in the act of stepping down from it, the car started with sufficient force to throw you, as you have stated, and yet stopped again in running two feet? A. Yes, sir; I can tell the jury that the car had stopped, and when I was getting out it made a forward jerk with such force that it threw me out on this leg. . . . Q. And there was no bell given by the conductor to the gripman to start the car? A. Not that I know of.'' He could not see the gripman and did not know what

he was doing. He fell with his back to the front of the car.

The testimony on the part of the defendant was to the effect that the plaintiff attempted to alight before the car stopped. "He got up and got hold of the post that runs up and down and turned around and when he was within four or five feet of the stopping place he started to get off and fell. He held to the post with his right hand. The car was still running when he stepped off and fell, but running slowly." The gripman testified that the car had not stopped when the plaintiff fell, but was going very slowly and stopped within eighteen or twenty inches afterwards. He said he could not have stopped within less than ten or twelve feet if he had started after stopping. Other testimony in defendant's behalf was to the effect that there was no start after a stop and no jerk.

The conductor was a witness for defendant, and during his cross-examination plaintiff's attorney asked him questions which brought out the statement that he had made a written report of the accident to the company which contained the names of witnesses and a statement of how the accident happened. On redirect examination defendant offered the report in evidence, to which plaintiff objected, the objection was sustained, and defendant excepted.

Over defendant's objection plaintiff was permitted to ask one of his witnesses, and on cross-examination one of defendant's witnesses, about the condition of the tracks at the crossing; the objection was on the ground that there was no charge of defective track in the petition. Defendant excepted to the ruling. But the answers of the witnesses showed no appreciable defect. It came out in defendant's testimony that sometimes a rough knot or a loose strand in the cable would catch in the grip-jaws when the car was standing still and cause the car to be jerked forward, but the evidence was that there was no such defect in this cable.

At the close of the plaintiff's evidence and again at the close of all the evidence defendant asked a peremptory instruction to the effect that the plaintiff was not entitled to recover, which instructions were refused and defendant excepted.

There are five instructions given at the request of the plaintiff, of two of which defendant complains, to-wit:

"1. The court instructs the jury that if you believe from the evidence the defendant, on or about August 7, 1903, managed, conducted and operated a cable street railroad in a north-and-south direction along Walnut street in Kansas City, Mo., on which it carried passengers for hire, and that on or about said date plaintiff became a passenger upon a car, the motive power of which was an endless cable, on said railroad, then being managed, controlled and operated by defendant on its said street railroad by its servants and agents upon and in charge thereof, and paid his fare to be carried as a passenger thereon to Ninth and Walnut streets in said city, and that when the said car upon which plaintiff was a passenger as aforesaid arrived at the south side of Ninth street it was stopped or slowed down so as to be almost stopped by defendant's servants and agents in charge of said car at the usual place for that purpose to allow passengers to get on and off of said car, and that upon the stopping of said car or the slowing of the speed of said car so that it was almost stopped, for the purpose aforesaid, the plaintiff attempted to alight therefrom, and that in attempting to alight from the car under such circumstances and in his conduct in so doing he was exercising the same care and caution an ordinarily prudent person would exercise under similar circumstances, and while he was in the act of so doing, the defendant, acting by and through its servants and agents upon and in charge of said car, carelessly and negligently, and without allowing plaintiff a reasonable time to get off of said car,

and without any warning to plaintiff, caused or per-
mitted said car to be suddenly started and jerked for-
ward, whereby the plaintiff was thrown violently from
said car to the pavement, and was thereby wounded,
and the bones of his left leg near the hip were broken,
and he was thereby disabled and rendered a cripple
for life, then your verdict must be for the plaintiff.''

"2.   And if you believe from the evidence defend-
ant received and accepted the plaintiff as a passenger
upon one of its street cars which it was then operat-
ing by its servants upon and in charge thereof, and that
plaintiff was injured while a passenger of defendant
and while in the act of alighting from such car by rea-
son of the acts of the servants of defendant upon and
in charge of said car operating the same failing to
allow plaintiff a reasonable time to get off of said car
and causing or permitting said car to be suddenly start-
ed or jerked forward, then the defendant and its ser-
vants upon and in charge of said car operating the
same were bound to exercise towards plaintiff for his
safety as a passenger on such car, in the respects re-
ferred to in the instructions, the highest reasonably
practicable degree of care a very prudent person en-
gaged in like business would exercise under similar
circumstances to those disclosed by the evidence in
this case.''

Defendant asked twelve instructions, all of which
were given and all were marked by the court ''given''
except instruction No. 11, which, the record says was
inadvertently marked ''refused,'' but it was read to the
jury with the rest as one of defendant's instructions
and argued as such by defendant's attorney and taken
by the jury to their room on retiring.   The bill of ex-
ceptions says:   ''To the action of the court in marking
said instruction No. 11 'refused,' defendant duly ex-
cepted.''   That instruction is as follows:

"11.   If you believe and find from the evidence
that the plaintiff's injuries, if he sustained any in-

juries, were caused by his leaving the defendant's car before it had stopped still on the south side of Ninth street and while the same was in motion, and that but for such attempt on his part to alight from said car while the same was in motion he would not have sustained any injury, then the plaintiff cannot recover, and your verdict must be for the defendant.''

I.  Defendant insists that it was error to have allowed the plaintiff to introduce evidence as to the condition of the track and machinery, since the petition did not charge negligence from that source.  We do not understand the evidence as tending to show any such defect, on the contrary the answers to the questions objected to were to the effect that there was no such defect.  But the purpose of the questions was only to show the course through which the car had to pass and stop, as bearing on the question of whether there was a stop, a start and a jerk.  The case was not submitted to the jury on any theory of defect in tracks or appliances.  Appellant is correct in its proposition that where specific acts of negligence are charged plaintiff cannot recover on acts of negligence not specified, but that principle of law is not in this case.

II.  It is contended that instruction numbered 1 is erroneous because it is not based on any evidence.  The proposition is that since the plaintiff's testimony was that the car came to a full stop, and that while plaintiff was then attempting to alight, it started with a jerk, there was no evidence that the jerk came while the car was slowing down and almost stopped.  It is true the plaintiff's testimony was emphatic to the fact that the car stopped still and that the jerk came afterwards and if that was all the testimony in the case the argument would have more ground to rest on, but the defendant's testimony was that the car had not quite stopped and that there was no jerk.  The argument

227 Sup—30

is that because the only evidence that there was a jerk was that it came after a stop, therefore there was no evidence of a jerk unless there was a stop. But that argument overlooks the main point in the plaintiff's case, that is, that it was the jerk that threw him down. The jerk with its injurious consequences was just the same whether it came after the car had stopped or while it was slowing down and nearly stopped. In Ridenhour v. Ry. Co., 102 Mo. 270, the petition alleged that the car had stopped, but the testimony was that it had not quite stopped and it was claimed that there was a failure of proof and a variance between the facts alleged and those proven, but this court said: "The negligence charged consists in permitting the car to be put in motion while plaintiff was in the act of leaving the car." It was also said in that case that the statement in the petition that the car had stopped for the purpose of permitting the plaintiff to alight therefrom was only a matter of inducement. In the case at bar the petition states that the car had "stopped or had slowed down so as to be almost stopped." The plaintiff's testimony was that it had stopped, the defendant's testimony was that it had slowed down and was moving very slowly. It is immaterial on that point which was correct, because in either event if the car was started with a jerk of sufficient force to throw the plaintiff down on the street, the allegation of negligence is sustained.

But defendant also argues that there was no testimony tending to show that the jerk, if jerk there was, was caused by any act of either the gripman or the conductor, and to sustain this contention counsel refer to the testimony of the plaintiff, who, when asked if he saw the conductor or the gripman do anything or if he heard anything in the way of a signal or action of the grip, answered that he did not. "Q. And there was no bell given by the conductor to the gripman to start the car? A. Not that I know of. . . . Q.

When you were getting off and the car started you did not see the gripman? A. No, sir. . . . Q. And you did not hear any of the machinery work to start the car? A. I only felt the car start. Q. You know as a matter of fact that when the gripman pulls the grip to start the car it makes a great loud noise? A. Yes, sir. Q. You did not hear anything of that sort? A. I did not listen to it."

And the learned counsel argue that the doctrine of *res ipsa loquitur* does not apply, which, without so deciding, may be conceded. But when facts and circumstances are shown, the triers of the facts are entitled to draw inferences that reasonably come from them. That the plaintiff in the act of alighting from the car, trusting the carrier's servants are doing their duty, and mindful of his own duty to use reasonable care for his own safety, should not observe the motions or acts of the gripman or conductor, is not strange. What passenger on a street car, that has stopped at his destination, stops, in his act of alighting, to observe if the men in charge of the car are doing their duty? If in watching them he should make a misstep and fall, what would the carrier say about his contributory negligence? It would be unreasonable to suppose that this man, who, if his testimony is true, was thrown to the pavement by a quick jerk of the car, and fell with a broken hip, would know or remember the minor details of the facts causing the accident. The testimony shows how a car is moved and how it is stopped and how it behaves when the men who are operating it are performing their duty, and if it should behave in an unusual way it is not unreasonable if the jury should infer that the unusual movement was caused by that which might reasonably cause it. If reasonable inferences are not in such case allowed, circumstantial evidence is of no value. The jury knew from the evidence in this case that if the car, either after it had stopped or while it was slowing down, moved quickly forward

with a jerk, the cable had been caught in the grip; they also knew from the evidence that there were but two things that could cause that motion, one was the act of the gripman, the other a rough knot or loose strand in the cable, and the evidence so far as it went on that point tended to show that there was no defect in the cable. Therefore, the jury were bound to believe either that there was no sudden movement or jerk of the car, or else that the gripman unfortunately applied the grip.

It is argued that the car could not have started and stopped within the distance the plaintiff testified, two feet. To what extent was the plaintiff competent to estimate the distance the car went after he had fallen and broken his hip and lay helpless on the pavement? Within what distance a car could be stopped under those circumstances is a mere matter of opinion, and evidence on that subject is not always very reliable. The jury had that question with others well before them and they were competent to give it the weight it deserved.

Appellant's criticism of plaintiff's second instruction goes on the same grounds as the first. We find no error in either of them.

III. The statements in the bill of exceptions in reference to defendant's instruction numbered 11 are a little inconsistent. It says that the instruction was inadvertently marked "refused" but that it was read to the jury and argued by defendant as the defendant's instruction and taken by the jury to the jury room, then it says, to the action of the court in marking the instruction refused, the defendant duly excepted. We do not see how it could be called an act of inadvertence if it was suffered to so remain when the court's attention was called to it by an exception in due time. If it was an act of inadvertence and if the court's attention was called to it by an exception in due time it would doubtless have been corrected. If, however, the

mistake was not discovered until after the trial and the exception was then taken, the exception was too late.

The defendant by reading and arguing it to the jury got more benefit from the instruction than it was entitled to, because it was an erroneous instruction or it was at least misleading. It conveyed the idea that if the plaintiff was attempting to alight from the car while it was still moving he could not recover. The idea was somewhat veiled by the clause "and that but for such attempt on his part to alight from the car while the same was in motion he would not have sustained any injury." It is susceptible of the construction that even if the plaintiff had been thrown off the car by the jerk yet he could not recover if the jury should believe that if he had kept his seat until the car stopped he would not have been in a position where the jerk would have thrown him off. If he was thrown off by the jerk it is immaterial whether the car had stopped as the plaintiff said or was slowing down and going very slowly as defendant's testimony said. The instruction ignores the sudden impetus given to the car by the jerk which it is alleged was the cause of the accident. If the jerk came before the car had ceased entirely to move and the man had remained in the seat and was there when the jerk came, it is probable he would not have been thrown off the running-board by the impetus, but it was not negligence *per se* in him to step on the running-board while the car was moving slowly, yet this instruction in effect so implies, and directs the jury to find for the defendant if they should believe that the plaintiff would not have been injured if he had not attempted to alight before the car came to a standstill. Defendant might have framed an instruction on the theory of contributory negligence stating hypothetically that fact, but was not entitled to assume it as negligence *per se.*

IV.   There was no error in refusing to allow the defendant to read in evidence the report made by the conductor to the company.   The only ground on which appellant contends it should have been admitted is that plaintiff asked the conductor questions about it.   Plaintiff's questions did not call for the contents of the report and none were elicited.

V.   It is lastly insisted that the damages awarded are excessive.   The award was $7750.   The appellant in its brief has very little to say on that subject, but merely states it without argument as if it were a self-evident fact.   The plaintiff was an old man sixty-seven, hale and vigorous.   When he fell on the pavement his hip was broken and other injuries ensued; he was unable to rise, was carried and put into a carriage and taken home, could not be taken up to his bedroom but was put to bed on the first floor.   His physicians put him in a plaster cast which practically covered half his body, and during the whole time he suffered greatly; it was eight months before he was able to leave his bed, and at the time of the trial three years after the accident he was barely able to go the distance of one or two city squares with the aid of crutches, and required attendance when he left home for a greater distance; the evidence tended to show that he would probably never again have the use of his injured leg. We think the award was not excessive.

There was no error in refusing the peremptory instructions to the effect that plaintiff was not entitled to recover.

We find no error in the record.   The judgment is affirmed.   All concur.