COMMERCE TRUST COMPANY and Roy P. Swanson, Co-Trustees, Respondents,

v.

Robert W. DUDEN et al., Respondents,

Dennis Vandever Hughes, Appellant,

Unborn and unknown children of Robert W. Duden and Daniel F. Duden, Repondents.

No. KCD 26714.

Missouri Court of Appeals, Kansas City District.

May 5, 1975.

Donald G. Stubbs, Steven J. Borel, Stubbs, Epstein & Mann, Kansas City, for appellant Dennis Vandever Hughes.

Norman M. Arnell, Kansas City, for respondents Robert W. Duden, Beverly Duden Stacey, Michael R. Duden and Dana R. Duden; Margolin & Kirwan, Kansas City, of counsel.

Before SOMERVILLE, P. J., PRITCHARD, C. J., and TURNAGE, J.

SOMERVILLE, Presiding Judge.

The co-trustees of an inter vivos trust, insofar as pertinent to this appeal, brought a declaratory judgment action seeking judicial determination of the intent of the settlor with respect to certain language employed in the trust agreement. The case is one of first impression in this state since the junctional issue is whether a child of one of settlor's sons who was lawfully adopted by another person was intended by the settlor to be included in a class described as "natural and adopted children".

The trust instrument in question was executed on April 29, 1963, by Nancy Mae Duden as settlor and Commerce Trust Company and Roy P. Swanson as co-trustees. Under the terms of the trust instrument the co-trustees were to pay the income of the trust estate to the settlor during her life and, upon her death, the balance of the trust estate (after payment of estate and inheritance taxes and certain minimal cash gifts) was to be divided into two separate and equal trusts designated Trust A and Trust B.

The principal beneficiary of Trust A was settlor's son Robert W. Duden. The principal beneficiary of Trust B was settlor's son Daniel F. Duden. The provisions of both trusts were the same except as they respectively applied to Robert W. Duden and Daniel F. Duden.

Paragraph 2 of the "THIRD" article of the trust instrument, which relates to Trust B, contains the language which is the sub-

ject matter of this litigation on appeal. The salient part reads as follows:

"2. TRUST B. The Trustees shall pay to Settlor's son, DANIEL D. DUDEN,[1] if he survives Settlor, three-fourths (¾ths) of the net income from Trust B, in monthly installments, until said Daniel D. Duden shall attain his fiftieth (50th) birthday, at which time the Trustees shall pay to said Daniel D. Duden three-fourths (¾ths) of the principal and accrued net income of Trust B. If the said Daniel D. Duden survives the Settlor but does not survive to attain his fiftieth (50th) birthday or if the said Daniel D. Duden does not survive the Settlor, then upon the death of said Daniel D. Duden or upon Settlor's death, whichever is later, three-fourths (¾ths) of the principal and accrued net income of Trust B shall be held, handled, used, divided and distributed as provided below for the benefit of the children, both natural and adopted, of said Daniel D. Duden.

The Trustees shall pay to or for the benefit of the natural and adopted children of said Daniel D. Duden, quarter-annually, one-fourth (¼th) of the net income from Trust B, in equal portions, share and share alike. If the said Daniel D. Duden does not survive the Settlor or survives the Settlor but does not survive to attain his fiftieth (50th) birthday, then in either of those events the Trustees shall pay to or for the benefit of said children of Daniel D. Duden all of the net income from Trust B, in equal portions, share and share alike until the youngest said child of Daniel D. Duden shall attain his twenty-first (21st) birthday. Upon the youngest said child of said Daniel D. Duden attaining his twenty-first (21st) birthday the principal and accrued net income then remaining shall then be paid to said children surviving to the time when the youngest of them shall attain his twenty-first (21st) birthday, in equal portions, share and share alike.

If neither the said Daniel D. Duden nor any of his children survive to the time or times for distribution provided herein, then in that event the principal and accrued net income of Trust B shall be paid into and become a part of Trust A, hereinabove provided."

Robert W. Duden and Daniel F. Duden were the only children born of settlor's marriage to Robert D. Duden. The settlor died on February 10, 1968, during which year Robert W. Duden became fifty-three years of age and Daniel F. Duden became fifty years of age. The trial court found and held that the class designated in Trust B closed in 1968 and the correctness of such is not questioned on appeal.

There is no dispute that on every possible pertinent date settlor's son Robert W. Duden had three living children, namely, Beverly Duden Stacey, Michael R. Duden and Dana R. Duden (all of whom had attained the age of twenty-one prior to trial of this case). No other children were born to or adopted by Robert W. Duden.

Daniel F. Duden (settlor's other son) was at one time married to Betty Lou Duden (maiden name undisclosed by the record). This marriage produced one child, a son, Daniel F. Duden, III, whose date of birth was November 15, 1941. Shortly after their son's birth, Daniel F. Duden and Betty Lou Duden, who were living in Tulsa, Oklahoma at the time, separated. On May 2, 1942, the District Court of Tulsa County, Oklahoma, entered a decree of divorce in favor of Betty Lou Duden and awarded her sole and exclusive custody of Daniel F. Duden, III. Betty Lou Duden thereafter married Huber C. Hughes, Jr., and on February 21, 1944, they petitioned the appropriate court in Tulsa County, Oklahoma, for the adoption of Daniel F. Duden, III,

---

1. None of the parties have questioned "Daniel D. Duden" and "Daniel F. Duden" as not being one and the same person.

and Daniel F. Duden therein entered his written consent to the adoption. The final decree of adoption was entered in Oklahoma on March 19, 1946, at which time Daniel F. Duden, III, was by the court "ordered, adjudged and decreed" to be the "lawfully adopted child" of Huber C. Hughes, Jr., and the child's name was changed to Dennis Vandever Hughes. Therefore, prior and subsequent to all of the following dates, April 29, 1963, the date the trust instrument was executed, February 10, 1968, the date of settlor's death, and during 1968, the date the class closed, the son born of Daniel F. Duden's marriage to Betty Lou Duden was at all times the lawfully adopted son of Huber C. Hughes, Jr. No person other than Dennis Vandever Hughes, with reference to any of the mentioned dates, claimed to fall within the class designated "children natural or adopted" of Daniel F. Duden in paragraph 2 of the "THIRD" article of the trust instrument.

The trial court, apposite to the issues on appeal, found that Dennis Vandever Hughes, who had been adopted out of Daniel F. Duden's blood stream, was not intended by settlor to be included in the class described as "children natural or adopted" of Daniel F. Duden, and ordered the cotrustees to pay the remaining one-fourth balance of the principal of Trust B as follows: three-fourths to Robert W. Duden, one-twelfth to Beverly Duden Stacey, one-twelfth to Michael R. Duden, and one-twelfth to Dana R. Duden.

Dennis Vandever Hughes, alone, appealed from the judgment entered by the trial court. Of the respondents, only Robert W. Duden, Beverly Duden Stacey, Michael R. Duden and Dana R. Duden filed a brief on appeal. All the remaining respondents have taken a passive attitude regarding the appeal.

Dennis Vandever Hughes maintains that "he has always been and always will be the natural child of his father, Daniel F. Duden" and his adoption by Huber C. Hughes, Jr., "is of absolutely no significance whatsoever in this case". The non-passive respondents on appeal maintain that the language employed by the settlor in the controversial article of the trust instrument, coupled with certain extrinsic evidence, discloses that the settlor did not intend to include Dennis Vandever Hughes in the class designated therein. By way of anticipatory rebuttal, Dennis Vandever Hughes also maintains in his brief, as a separate point, that extrinsic evidence was not admissible to aid in ascertaining the settlor's intent since the language used was unambiguous. The overall thrust of Dennis Vandever Hughes' position on appeal being that biologically he was the natural child of Daniel F. Duden, and, therefore, was intended by settlor to be included in, and did in fact fall within, the class set forth in the trust instrument.

■ The controversial language does not lend itself to being characterized as ambiguous, in either a patent or latent sense, in view of the words employed by settlor and the time and context in which she is presumed to have used them (infra). The paramount rule, that absent ambiguity the intent of the maker of a legal instrument is to be ascertained from the four corners of the instrument without resort to extrinsic evidence, is here deemed applicable. First National Bank of Kansas City v. Hyde, 363 S.W.2d 647, 653 (Mo.1962); and Crist v. Nesbit, 352 S.W.2d 53, 56 (Mo.App.1961). In many instances extrinsic evidence as to intent is the "handmaiden" of confusion. Therefore extrinsic evidence, although introduced at the trial level, will not be considered, and the subject of this court's decisional focus will be the trust instrument itself.

Inclusion of the word "adopted" in the language under consideration evinces an awareness by settlor of the laws of this state concerning the adoption of children. The courts of this state have frequently held that the maker of a legal instrument is presumed to know the law and, accord-

ingly, presumed to employ language in the context of such law. Lounden v. Bollam, 302 Mo. 490, 258 S.W. 440, 441 (Banc 1924) ; Trautz v. Lemp, 329 Mo. 580, 46 S.W.2d 135, 139 (Banc 1932) ; St. Louis Union Trust Co. v. Hill, 336 Mo. 17, 76 S.W.2d 685, 688 (Banc 1934) ; and Thomas v. Higginbotham, 318 S.W.2d 234, 237 (Mo. 1958).

The statutory law of this state concerning adoption, and certain "landmark" cases hereinafter referred to construing its import, were constant when the settlor executed the trust instrument and, as well, on the date the class closed. Time of intent, therefore, sometimes encountered in earlier cases due to changes in the adoption law, presents no problem.

The legal metamorphosis undergone by the statutory law of this state pertaining to adoption, particularly in regard to the consequences of adoption,[2] unfortunately produced an amorphous conglomerate of case law. However, this result appears to have been inevitable since the courts were obliged to apply the statutory law in the time framework of the instruments involved even though the statutory law, in many instances, had undergone profound changes both prior and subsequent to the time particular decisions were handed down. Be that as it may, starting in 1917 and culminating in 1947 (the latter being the date Section 453.090, RSMo 1969, V.A.M.S.,[3] captioned "Consequences of adoption", was last amended) a clearly discernible statutory evolution occurred in this state appertaining to the consequence of adoption, and certain "landmark" cases during and subsequent to said dates were handed down reflecting an evolution of public policy concerning the consequences of adoption in view of the statutory changes. The statutory changes and "landmark" cases referred to firmed up the consequences of adoption and the underlying public policy presently embodied in this state's adoption laws. In St. Louis Union Trust Co. v. Hill, 336 Mo. 17, 76 S.W.2d 685, 689 (Banc 1934), the court, in holding that an adopted child fell within the class description of "heirs-at-law" as contained in a testamentary trust, held: "The Legislature had a right to and did in strong and emphatic language change the blood stream of an adopted child. Under our present statutes an adopted child's relations with its natural parents cease; and by law it becomes the child of its adopting parents *for every purpose* as fully as though born to the adopting parents in lawful wedlock. In other words, the adopted child is taken out of the blood stream of its natural par-

---

2. Ch. 119 § 3, RSMo 1865 (Laws of Mo. 1857 § 3 p. 59) ; § 1101 RSMo 1919 (Laws of Mo.1917 p. 194) ; § 453.090, RSMo 1949 (as amended by Laws of Mo.1947 V. II p. 213).

3. "453.090. Consequences of adoption.
   1. When a child is adopted in accordance with the provisions of this chapter, all legal relationships and all rights and duties between such child and his natural parents (other than a natural parent who joins in the petition for adoption as provided in section 453.010) shall cease and determine. Said child shall thereafter be deemed and held to be for every purpose the child of his parent or parents by adoption, as fully as though born to him or them in lawful wedlock.
   2. Said child shall be capable of inheriting from, and as the child of, said parent or parents by adoption as fully as though born to him or them in lawful wedlock and, if a minor, shall be entitled to proper support, nurture and care from said parent or parents by adoption.
   3. Said parent or parents by adoption shall be capable of inheriting from and as the parent or parents of, said adopted child as fully as though said child had been born to him or them in lawful wedlock, and, if said child is a minor, shall be entitled to the services, wages, control and custody of said adopted child.
   4. Said adopted child shall be capable of inheriting from and taking through his parent or parents by adoption property limited expressly to heirs of the body of such parent or parents by adoption.
   5. The word 'child' as used in this section, shall, unless the context hereof otherwise requires, be construed to mean either a person under or over the age of twenty-one years. (R.S.1939, § 9614, A.L.1947 V. II p. 213)."

ents and placed, by the operation of law, in the blood stream of its adopting parents, if adopted under the provisions of our present statutes."

Wailes v. Curators of Central College, 363 Mo. 932, 254 S.W.2d 645, 647 (Mo. banc 1953) is also deemed to be of "landmark" significance. The court in *Wailes* held that children who had been adopted out of a biological parent's blood stream were not pretermitted heirs (Section 526, RSMo 1939) of their grandparents. Thus, *Wailes* completed the circle—the consequences of adoption as between adopted children and their biological blood stream. *Wailes* cited with approval the statement quoted above from *St. Louis Union Trust Co.*, and additionally held, l.c. 647: "It seems to us that the legislature by the above section [present Section 453.090, RSMo 1969] has provided that when a person is legally adopted under the provisions of the adoption law, all ties of such adopted person with the natural parents and kin are completely severed. Note the statute reads, *'all rights and duties* between such child and his natural parents * * * *shall cease and determine.'* The section further reads, 'Said child shall thereafter be deemed and held to *be* for *every purpose* the child of his parent or parents by adoption, as fully as though born to him or them in lawful wedlock.' (Emphasis ours.) Can or should a court say that the legislature did not mean to say *all* rights shall cease and determine? We think not. We as a court have no right to read any exception into the law."

Section 453.170, RSMo 1969, V.A.M.S., makes the prevailing adoption statutes of Missouri applicable to this case even though Dennis Vandever Hughes was adopted pursuant to the laws of Oklahoma.

■ On the premise that settlor was presumed to have known the existing statutory law relative to adoption and to have utilized language that comported with such law, this court concludes that it was settlor's intent to use "natural and adopted children" of her son Daniel F. Duden in the context of children *legally* considered as being in the "blood stream" of her son Daniel F. Duden, videlicet, those biologically in his "blood stream" who had not been adopted out and biological strangers who had been adopted by him. Any other conclusion would do violence to the adoption laws of this state and the public policy embodied therein. The conclusion reached by this court that the settlor did not intend to include Dennis Vandever Hughes in the described class in no way impairs the fundamental right of a settlor of a trust, by a properly drafted instrument disclosing such to be his intent, to designate and include any one he pleases as the object of his bounty.

The principal cases cited by Dennis Vandever Hughes in support of his position, Amoskeag Trust Co. v. Haskell, 96 N.H. 89, 70 A.2d 210 (1950); In re Wolf, 98 N.J.Super. 89, 236 A.2d 166 (1967); and In re Myres Estate, 205 Misc. 880, 129 N.Y.S.2d 531 (1954), all involving children adopted out of the blood stream, are distinguishable since variations between the statutory laws of this state pertaining to adoption and those of the states from which the cases arose are, suffice it to say, numerous. Moreover, this court is quick to point out that none of said cases cited by Dennis Vandever Hughes reveal the consequences of adoption in the respective states to be as far reaching as in Missouri. With like celerity this court emphasizes that *Amoskeag, Wolf,* and *Myres* did not approach ascertainment of the respective makers' intent on the premise that they were presumed to know the law and to have utilized language in conformity with such law.

Statutory changes beginning in 1917, and St. Louis Union Trust Co. v. Hill, supra, and Wailes v. Curators of Central College, supra, constituted a major "break through" in this state regarding the consequences of adoption and the obtaining public policy as to the status of adopted children. This

"break through" brought direction and stability that was badly needed. The overly simplistic approach urged by Dennis Vandever Hughes for resolution of this appeal is inconsistent with the statutory changes and "landmark" cases referred to, and recidivous. From a practical standpoint, the "break through" mentioned would be nullified.

Judgment affirmed.

All concur.