Logan M. MORRIS, Appellant,

v.

Dorothy A. ULBRIGHT et al.,
Respondents.

No. 59938.

Supreme Court of Missouri,
En Banc.

Nov. 14, 1977.

Appellant's Motion for Rehearing
Denied Dec. 19, 1977.

Alan E. South, Kansas City, for appellant.

Robert M. Hill, Richmond, for respondents.

DONNELLY, Judge.

This is an action to quiet title to land.

On March 8, 1947, Lina A. Ulbright and Frank O. Ulbright, her husband, executed a deed which conveyed the property in question to Logan Mitchell Ulbright "and his bodily heirs." The natural son, and only child, of Logan Mitchell Ulbright was Logan M. Ulbright, Jr. On October 4, 1950, Marion V. Morris and Ruby N. Morris adopted Logan M. Ulbright, Jr. and his name was changed to Logan Marion Morris.

Linda A. Ulbright and Frank O. Ulbright are deceased.

On February 9, 1964, the heirs of Lina A. Ulbright conveyed to T. B. Alspaugh and Sara Jane Alspaugh.

On February 12, 1972, Logan Mitchell Ulbright died.

On January 24, 1973, the Alspaughs conveyed to Dorothy A. Ulbright and Ralph C. Ulbright.

Logan Marion Morris is plaintiff and claims title under the deed executed March 8, 1947. Dorothy A. Ulbright and Ralph C. Ulbright are defendants and claim title under the deed executed January 24, 1973.

The trial court entered summary judgment in favor of defendants. Plaintiff appealed to the Kansas City District of the Court of Appeals where the judgment of the trial court was reversed. The case was then transferred to this Court, by order of this Court, and will be decided here "the same as on original appeal." Mo.Const. Art. V, § 10.

The parties agree that the deed of March 8, 1947, created an estate tail; that under the deed and Section 442.470, RSMo 1969, the first taker (Logan Mitchell Ulbright)

took a life estate; and that the heir of the body (Logan M. Ulbright, Jr.—Logan Marion Morris) took a contingent remainder in the fee. *Davidson v. Davidson*, 350 Mo. 639, 167 S.W.2d 641 (1943). It is not seriously disputed that had Logan M. Ulbright, Jr., not been adopted on October 4, 1950, he would have taken in fee simple absolute upon the death of Logan Mitchell Ulbright on February 12, 1972. Defendants contend, however, that because of the provisions of Section 453.090, RSMo 1969, the adoption of plaintiff on October 4, 1950, "acted to remove the Plaintiff from the bloodstream of his natural father Logan Mitchell Ulbright and with no exception ceased and determined all rights and duties between Plaintiff and his natural father."

Section 453.090, RSMo 1969, provides that when a child is adopted in accordance with the provisions of Chapter 453, "all legal relationships and all rights and duties between such child and his natural parents * * * shall cease and determine."

The essential question in this case then becomes: Does plaintiff's interest, if any, in the land derive from Lina A. Ulbright and Frank O. Ulbright (grantors in the deed of March 8, 1947) or is plaintiff's interest, if any, one of inheritance from his natural father Logan Mitchell Ulbright (life tenant under the deed of March 8, 1947)? If the latter, plaintiff's interest was cut off by the adoption. If the former, it was not.

In 1 H. Tiffany, The Law of Real Property § 48 at 70 (3rd ed. 1939), we find the following:

"On the death of a tenant in tail, the land passes to the next heir of the body of the original donee; but such heir, though he takes because he is the heir of the body, takes not by descent, but as a substituted purchaser from the original donor, per formam doni, as it is expressed * * *."

This proposition finds express support in *Pollock v. Speidel*, 17 Ohio St. 439, 49 Am. Dec. 467 (1867) and implied support in

*Davidson v. Davidson, supra,* and *Byrd v. Allen*, 351 Mo. 99, 171 S.W.2d 691 (1942). See also 31 C.J.S. Estates § 21, at 47 (1964).

In addition, Section 442.490, RSMo 1969, provides that when a remainder shall be limited to the heirs of the body of a person to whom a life estate is given, the remaindermen who qualify as heirs of the body "shall be entitled to take as *purchasers* in fee simple, by virtue of the remainder so limited in them." (Emphasis ours).

Accordingly, we are of the opinion that plaintiff derived his title as purchaser under the deed from Lina A. Ulbright and Frank O. Ulbright and not by inheritance from his natural father. *Grimes v. Rush*, 355 Mo. 573, 197 S.W.2d 310 (1946). We hold that his interest in the land was not extinguished by the adoption and provisions of § 453.090, *supra*, because his interest in the land does not derive from his natural father.

The judgment is reversed and the cause remanded.

MORGAN, C. J., and HENLEY, J., concur.

BARDGETT and SEILER, JJ., concur in result.

FINCH, J., dissents in separate dissenting opinion filed.

RENDLEN, J., dissents and concurs in separate dissenting opinion of FINCH, J.

FINCH, Judge, dissenting.

I respectfully dissent.

The principal opinion concludes that the essential question for determination is whether plaintiff takes his interest, if any, as purchaser from Lina A. Ulbright and Frank O. Ulbright, grantors in the deed of March 8, 1947, or whether he takes by inheritance from his natural father who was the life tenant under said deed. It correctly concludes that one who qualifies as an heir of the body takes his interest by purchase and not by inheritance,[1] but, in my

---

1. Section 442.490, RSMo 1969, which abolished the rule in Shelley's case, has been held to have such an effect. *Riggins v. McClellan*, 28 Mo. 23, 30 (1850); *Cook v. Daniels*, 306 S.W.2d 573

view, this conclusion is not determinative of the issues before us.

The principal opinion simply assumes that under § 442.490 [2] plaintiff qualified as an heir of the body.[3] Such an assumption, in my view, is contrary to the plain language of § 442.490, which provides:

"Where a remainder shall be limited to the heirs, or heirs of the body, of a person to whom a life estate in the same premises shall be given, *the persons who, on the termination of the life estate, shall be the heir or heirs of the body of such tenant for life* shall be entitled to take as purchasers in fee simple, by virtue of the remainder so limited in them." [Emphasis supplied]

The statute does not purport to *identify* who shall take the property as a purchaser. On the contrary, the statute expressly conditions the vesting of the estate by purchase to those who may be identified as the heir or heirs of the body of the life tenant.

The majority opinion, in paraphrasing the above emphasized portion of the statute, apparently recognizes that only "the remaindermen *who qualify as heirs of the body* 'shall be entitled to take as purchasers . . . .' " but it contains no analysis of how the plaintiff herein satisfies the express condition precedent of meeting the description "heir of the body" at the death of the life tenant in tail. The opinion correctly concludes that the plaintiff's interest (if any) would not derive by inheritance from his natural father but it overlooks the fact that the *identity* of the one to take the property by purchase under the deed can only be determined by reference to the existing *legal relationship* (heir of the body) to the life tenant at the time of the life tenant's death.

I believe the essential question before the court is whether the plaintiff was the heir of the body of Logan Mitchell Ulbright when he (Ulbright) died. Resolution of this question necessarily involves an examination of our cases construing § 442.470,[4] the entail statute, and the impact of § 453.090,[5]

(Mo.1957). *See also* Fratcher, *Trusts and Succession in Missouri—1952*, 23 Mo.L.Rev. 467, 470 (1958). Note that Fratcher attributes like effect to § 442.470 *infra* note 4, even in the absence of § 442.490. *Id.* at 470.

**2.** All statutory references are to RSMo 1969 unless otherwise indicated.

**3.** The plain implication of the disposition in the principal opinion is that the remainderman holds a vested interest subject to defeasance should he not survive the life tenant. This effect is contrary to reason, to the plain language of the statute and to the longstanding decisions of this court, as demonstrated in the textual discussion, *infra.*

**4.** Section 442.470, RSMo 1969, provides:

"In cases where, by the common or statute law of England, *any person might become* seized in fee tail of any lands, by virtue of any devise, gift, grant or other conveyance, or by any other means whatever, such person, instead of being seized thereof in fee tail, shall be deemed and adjudged to be, and shall become, seized thereof for his natural life only; and the remainder shall pass in fee simple absolute to the person to whom the estate tail would, on the death of the first grantee, devisee or donee in tail, first pass according to the course of the common law, *by virtue of such devise, gift, grant or conveyance.*"

**5.** Section 453.090, RSMo 1969, provides:

"1. When a child is adopted in accordance with the provisions of this chapter, all legal relationships and all rights and duties between such child and his natural parents (other than a natural parent who joins in the petition for adoption as provided in section 453.010) shall cease and determine. Said child shall thereafter be deemed and held to be for every purpose *the child of his parent or parents by adoption,* as fully as though born to him or them in lawful wedlock.

"2. Said child shall be capable of inheriting from, and as the child of, said parent or parents by adoption as fully as though born to him or them in lawful wedlock and, if a minor, shall be entitled to proper support, nurture and care from said parent or parents by adoption.

"3. Said parent or parents by adoption shall be capable of inheriting from and as the parent or parents of said adopted child as fully as though said child had been born to him or them in lawful wedlock, and, if said child is a minor, shall be entitled to the services, wages, control and custody of said adopted child.

"4. Said adopted child shall be capable of inheriting from and taking through his parent or parents by adoption property limited expressly to heirs of the body of such parent or parents by adoption.

"5. The word 'child' as used in this section, shall, unless the context hereof otherwise requires, be construed to mean either a person under or over the age of twenty-one years."

the "consequences of adoption" statute, on the interest of a remainderman thereunder.

The parties do not question that the limitation in this conveyance to "Logan Mitchell Ulbright and his bodily heirs" would have created a fee tail at common law. By virtue of § 442.470, this limitation vested Logan Mitchell Ulbright with a life estate and created a remainder to those persons to whom the estate tail would, on the death of the first grantee in tail, pass according to the course of the common law. However, this remainder is not vested, but is a contingent remainder of the "fourth class," the contingency existing as to persons not ascertained at the time the grant is made. *Grimes v. Rush*, 355 Mo. 573, 575, 197 S.W.2d 310, 311 (1946). Thus, the effect of § 442.470 is that a conveyance to one and his or her bodily heirs carves out of the grantor's fee simple estate a life estate in the first taker and a contingent remainder in those qualifying as bodily heirs on the death of the first taker, while the fee or reversion remains in the grantor, his assigns, heirs or devisees pending determination of the original grant at its vesting or falling in for want of takers as bodily heirs of the grantee for life. *Mattingly v. Washburn*, 355 Mo. 471, 476, 196 S.W.2d 624, 626 (1946); *Davidson v. Davidson*, 350 Mo. 639, 642, 167 S.W.2d 641, 642 (1943).

In determining the identity of those qualifying as a "bodily heir," it must be noted that the word "heir" is one of technical legal significance. It is defined in Black's Law Dictionary (4th ed. 1951) as: "the person *appointed by law* to succeed to the estate in case of intestacy."[6] An "heir of the body" is a subclass of "heir"—i. e., "an heir begotten or borne by the person referred to  .  .  .." In Missouri, the phrase has been held to mean "an heir begotten of the body; a lineal descendant." *Clarkson v. Hatton*, 143 Mo. 47, 56, 44 S.W.

761, 762 (1898). The Restatement of Property § 306 (1936) provides:

"When a limitation is in favor of the 'heirs of the body' of a designated person, or is in other words of similar import, then, unless a contrary intent of the conveyor is found from additional language or circumstances, the persons so described are the lineal descendants of the designated ancestor who *under the applicable local law* would succeed to the property if such ancestor died owning the property and intestate  .  .  .." [Emphasis supplied]

It has long been recognized in this state that the law of inheritance is a creature of statute. *In re Cupples Estate*, 272 Mo. 465, 473, 199 S.W. 556, 558 (1917). Furthermore, "the right of the Legislature to prescribe the right of descent and inheritance cannot be doubted. It is not a natural right." *Cupples, supra* at 471, 199 S.W. at 557.[7] Thus it is readily apparent from the foregoing that the relationship of one person as an "heir of the body" of another is a legal relationship which is established by statute rather than a natural relationship which exists as of right independent of a statutory grant.[8]

It is axiomatic that a man does not have heirs until he dies. How then does anyone receive a contingent remainder in fee by purchase before the life tenant's death? Logically, because the nature of the contingency is that those who will take the property are unascertainable until the death of the life tenant, nobody can be said to own a remainder interest at all until such death, at which point the estate vests in possession or falls in for want of takers. However, it may be said that those who are *presumptive* heirs of the body at any given moment do have at least an expectancy interest. That is, once a child is born to the life tenant it is

**6.** Identical language is used in *In re Cupples Estate*, 227 Mo. 465, 199 S.W. 556 (1917). To like effect, 26 C.J.S. *Deeds* § 99 at 862.

**7.** *Quoting State ex rel. Fath v. Henderson*, 160 Mo. 190, 60 S.W. 1093 (banc 1901). *See also Thomas v. Higgenbotham*, 318 S.W.2d 234, 238 (Mo.1958); *Gardner v. Vanlandingham*, 334

Mo. 1054, 69 S.W.2d 947 (1934); *Krause v. Jeannette Inv. Co.*, 333 Mo. 509, 62 S.W.2d 890 (1933).

**8.** *See Wailes v. Curators of Central College*, 254 S.W.2d 645 (Mo. banc 1953); *Shepard v. Murphy*, 332 Mo. 1176, 61 S.W.2d 746 (1933).

clear that at any given moment the life tenant could die and the remainder in fee would immediately vest in both interest and possession in the surviving child by virtue of the fact that the child would then be identified as an heir of the body under the existing intestacy statute, from which such identity derives. This expectancy of the presumptive heir is recognized in Missouri to be of sufficient weight to constitute a contingent remainder which may be "conveyed" by quitclaim deed. § 442.020; *Grimes v. Rush*, 355 Mo. 573, 197 S.W.2d 310 (Mo.1946).[9] Of course, any interest claimed under such a deed would be subject to the same contingency of the grantor being properly identified as an heir of the body under the intestacy statute upon the death of the life tenant.

With the above principles in mind, the facts submitted for our consideration tend to establish that Logan M. Ulbright, Jr., the natural son and only child of Logan Mitchell Ulbright was born sometime prior to March 8, 1947. On that date, Lina A. Ulbright and Frank O. Ulbright, her husband, executed a deed which conveyed the property in question to Logan Mitchell Ulbright "and his bodily heirs," the grantors reserving a life estate unto themselves. Apparently, then, Logan M. Ulbright, Jr., held a contingent remainder from and after the date of the deed, the nature and incidents of which are outlined above. It is properly agreed by the parties that if plaintiff had not been adopted prior to the death of Logan Mitchell Ulbright the remainder in fee would have vested in interest and possession at the moment of said death. At that moment, the heirs of the body of Logan Mitchell Ulbright could be identified by reference to the intestacy statute and plaintiff, had he not been adopted by Marion and Ruby Morris, would clearly have held such legal relationship. The remaining question, therefore, is the effect of plaintiff's adoption prior to his natural father's death. Specifically, does the adoption by another of the natural son of a living life tenant in tail prevent the son from being identified as an heir of his natural father's body upon the father's death, thereby barring his claim to the remainder interest in fee by purchase under a deed?

Although the above question is one of first impression in this court, I believe our previous interpretations of the adoption statutes clearly mandate an affirmative answer. Our current statute on consequences of adoption, § 453.090, provides in pertinent part:

"1. When a child is adopted in accordance with the provisions of this chapter, *all legal relationships* and all rights and duties between such child and his natural parents (other than a natural parent who joins in the petition for adoption as provided in section 453.010) *shall cease and determine.* Said child shall thereafter be deemed and held to be for every purpose the child of his parent or parents by adoption, as fully as though born to him or them in lawful wedlock." [Emphasis supplied]

The above quoted language is identical in all pertinent respects to Laws 1917, p. 194, § 1677,[10] which, with accompanying sec-

---

**9.** *Grimes*, cited by appellant, stated in dictum that the interest of the remainderman was held contingently subject to it being defeated by their predeceasing their mother or being defeated in part by birth of other children who with them thereafter qualified as "heirs of her body." Appellant urges that these are the only involuntary contingencies which could defeat the remainder. However, the contingency presented in this case was not then before the court and the holding was limited to the ability of the remainderman to voluntarily convey his interest. The dictum cited is more compatible with a vested remainder subject to defeasance, which has never been recognized as the effect of the entail statute, and thus should not be followed.

**10.** This section, from which the subsections of § 453.090 were drawn, contained a further proviso that "neither the said adopted child nor said parents by adoption shall be capable of inheriting from or taking through each other property expressly limited to heirs of the body of such child or parent by adoption." This proviso is expressly reversed in § 453.090(4), *supra* note 5, adopted in 1948. Such action by the legislature appears to support the conclusion reached herein because it cures the inequity of the adopted child being considered as incapable of qualifying as an heir of the body of

tions, was the first statutory codification of a comprehensive scheme of adoption by judicial proceedings. Prior to that law, adoption could be accomplished by deed, but with more limited consequences. Thus, cases decided by reference to previous adoption laws are no longer authoritative where execution of the instrument for construction and the adoption occur subsequent to 1917. *Shepard v. Murphy*, 332 Mo. 1176, 61 S.W.2d 746 (1933).

*Shepard* was the first case to reach this court which necessitated an interpretation of the effect of the 1917 adoption legislation on the inheritance rights and relationships established by the inheritance statute as between the natural parent and adopted child. The cause before the court was a claim by the natural mother that she was entitled to inherit property of her natural son when he was predeceased by his adopting parents. As noted previously,[11] the court there recognized that inheritance is not a natural right but is subject to the control of the Legislature. The court determined that the legal right of inheritance from a child dying intestate and without descendants which is ordinarily enjoyed by the natural parents under the statute of descent and distribution had been abrogated by the enactment of the section of the adoption statute above quoted. Thus, the mother could not inherit from her natural child from and after his adoption because "the ordinary legal right of the natural parents to inherit from the child is cut off and terminated; . . . all legal relationship and rights of the parent by blood are abrogated . . . ." 332 Mo. at 1183, 61 S.W.2d at 749.

In *St. Louis Union Trust Co. v. Hill*, 336 Mo. 17, 76 S.W.2d 685 (banc 1934), this court again addressed the question of the effect of the 1917 adoption legislation. The case involved construction of a will which left to one Frank W. Hill, Jr., a life estate with a remainder in fee to his "heirs at law." Two sons of Hill's wife by a previous marriage were adopted by Hill on his deathbed. Determining that the sons so adopted met the description of "heirs at law" and therefore took the remainder as tenants in common, this court stated the effect of the 1917 adoption legislation.

"The Legislature had a right to and did in strong and emphatic language change the blood stream of an adopted child. Under our present statutes an adopted child's relations with its natural parents cease; and by law it becomes the child of its adopting parents *for every purpose* as fully as though born to the adopting parents in lawful wedlock. In other words, the adopted child is taken out of the blood stream of its natural parents and placed, by the operation of law, in the blood stream of its adopting parents, if adopted under the provisions of our present statutes." [12]

The language above which refers to removal of the child from its natural parent's bloodstream was fully supported by the holding in *Shepard* that the natural parent was not the heir of the child. It could be characterized under the facts of *Hill* as gratuitous dictum by this court and without force of law but for the adoption of this language in *Wailes v. Curators of Central College*, 254 S.W.2d 645 (Mo. banc 1953), where the question of an adopted child's status as heir of its natural parents and grandparents was squarely presented. This court, in citing the above language with approval, held that an adopted child could not support a valid claim as a pretermitted heir of its natural grandparents because the legal relationships or rights as heir of the natural parents or grandparents, by statutory mandate, "cease and determine" upon adoption. It is important to note that the language construed to effect such a result was contained in § 453.090(1), set out *supra*, which, although enacted in 1948, was mere-

either the natural parent, by virtue of the language voiding all legal relationships between the natural parent and the child, or of the adopting parents, by virtue of the proviso of the 1917 act.

11. *See* note 7 and accompanying text *supra*.

12. 336 Mo. at 25, 76 S.W.2d at 689. (Emphasis in original)

ly a reenactment of identical language contained in the 1917 provision. Thus it may fairly be stated that the effect of the provision so construed in *Wailes* has remained unchanged from 1917.[13] The parties have not cited, nor did my own research reveal, any cases to the contrary.[14]

The disposition of the property in this case must be controlled by the intent of the grantor as it may be determined within the four corners of the deed. We are not free to speculate on what the grantors' intent might be today were they living, nor would such inquiry be permissible even if the grantors were alive. In this case, the words chosen provide little guidance in and of themselves. However, a wealth of statutory guidance has been provided as to the meaning of the words chosen.[15] The deed itself offers not even the slightest nuance that the grantors intended anything other than the established statutory meaning. If any actual intent may be found at all, it is that the words were chosen precisely to achieve the effect supplied by statute.

By limiting their grant to Logan Mitchell Ulbright "and his bodily heirs," the grantors expressly declared their intent that the property should pass to their son for life, according to the course provided by § 442.-470. The identity of those who would receive the property in fee either by reversion or remainder were likewise to be determined by reference to that statute. By longstanding judicial interpretation, those who are heirs of the body of the life tenant at death are determined by reference to the intestacy statute; those lineal descendants meeting the description of "heirs" under the statute being "heirs of the body."

Since 1917, some 30 years prior to the execution of this deed, the statutes of this state have provided that, upon adoption, all legal relationships and rights between the natural parent and adopted child shall "cease and determine." The relationship of a child to a parent as "heir" is determined upon death and is clearly a legal relationship because it arises solely by statute. The status of one as "presumptive heir" is likewise a legal relationship. Such relationships are clearly terminated as between the natural parent and adopted child at the time of the decree of adoption. Thus, absent some other language in the instrument indicating a contrary intention, an adopted child is neither the "heir" nor "heir of the body" of the natural parent.

Under the facts of this case, at the time of the deed Logan Mitchell Ulbright, Jr., apparently then in being, took a contingent remainder of the fourth class. It could not then be ascertained whether he would be an heir of the body of his natural father at the father's death; but, had the father died prior to his adoption, he would have taken the remainder in fee by purchase under the deed. Upon the decree of adoption, however, Logan Mitchell Morris no longer held a contingent remainder under the deed because at that moment he was no longer the presumptive heir of his natural father and was incapable from that moment forward of meeting the description in the deed of who should take at his natural father's death.

---

13. Note, 19 Mo.L.Rev. 86 (1954).

14. For the most part, cases addressing related questions have involved construction of provisions in wills or trusts executed by either the *natural or adoptive parent or grandparent.* A detailed analysis of such cases would serve no useful purpose here because the results in such cases may be distinguished on the basis of the testator's or settlor's intent, which is generally more fully disclosed in such instruments than in the case before us of a deed using terms which have a settled statutory construction. *See, e. g., First Nat'l Bank of Kansas City v. Sullivan,* 394 S.W.2d 273 (Mo.1965); *Commerce Trust Co. v. Weed,* 318 S.W.2d 289 (Mo.

1958); *Commerce Trust Co. v. Duden,* 523 S.W.2d 97 (Mo.App.1975).

15. As an aid in determining the grantor's intent, the courts of this state have frequently held that *the maker of an instrument is presumed to know the law and, accordingly, presumed to employ language in the context of such law. Commerce Trust Co. v. Duden,* 523 S.W.2d 97, 99 (Mo.App.1975), and cases there cited. Such presumption is particularly appropriate where, as discussed subsequently in this opinion, the language employed has enjoyed a settled and longstanding construction prior to the drafting of the instrument.

Such a result is not disconsonant with the underlying policy of the entail statute. Though some states have abolished the fee tail estate entirely by vesting the fee in the first grantee, Missouri's statutory provision allows the grantor to keep the land in the family for at least one generation as a balance between the interest of the grantor to keep the land in the family permanently and the interest of the state in free alienability. If any intent on the part of the grantors here may be discerned, their selection of the fee tail form of transfer evidences an intent to keep the land in the family. The construction of the adoption statutes declared in *Wailes* and urged herein furthers that policy and likely intent. I would therefore affirm the judgment.

